**MODIFY and  AFFIRM; and Opinion Filed February 9, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01590-CR

### TOMMY EUGENE SIMMONS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F12-61499-L**

## MEMORANDUM OPINION
Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Tommy Eugene Simmons appeals his conviction and 30-year sentence for aggravated kidnapping.  In two issues on appeal, both related to the punishment phase of trial, appellant argues (1) the evidence is insufficient to support the jury's rejection of his affirmative defense that he released the victim in a safe place, and (2) the trial court abused its discretion by admitting photographs of his tattoos.  For the reasons that follow, we modify and affirm the trial court's judgment.  We issue this memorandum opinion because all issues are settled in law. TEX. R. APP. P. 47.4.

### BACKGROUND

On the day appellant was released from Hutchins State Jail in Dallas on a robbery conviction, he went to downtown Dallas where he saw Michelle Tortora, a 19-year-old senior in high school, waiting to catch a bus at the DART bus station near the West End.  Appellant began

talking to her and after a few minutes of conversation, Tortora changed her mind about going to visit a friend and decided to hang out with appellant. They smoked marijuana, drank alcohol, and held hands as they walked the downtown streets. Then they took a bus to NorthPark Mall to watch a movie, but because they did not have enough money and appellant was feeling the effects of the alcohol, they went outside to the mall parking lot. It was approaching dusk.

Appellant decided he wanted to go home to Nacogdoches, and he and Tortora walked around the parking lot for about two hours looking for someone to rob and a car to steal. Appellant saw the complainant sitting in a van and told Tortora she was the "perfect target." While Tortora distracted the complainant by asking for directions, appellant forced his way into the van, put his hand over the complainant's mouth, or punched her in the mouth, and pushed her halfway into the backseat. Appellant got in the driver's seat and Tortora got in the front passenger seat. The complainant had to pull her legs into the backseat with the rest of her body using her arms (she had polio as a child growing up in Vietnam). The complainant screamed and cried and pleaded with appellant and Tortora to let her go. At various times, appellant said he would let her go in an hour, and other times he made a gesture across his throat and said he was going to kill her if she did not stay quiet.

Appellant told Tortora to take the complainant's cash and cell phone. The complainant started receiving calls and texts, presumably from her friends at the mall that she was waiting for when appellant kidnapped her. Although the complainant's English was poor and she spoke mostly Vietnamese, appellant forced her to call back and say, in English, that she would return in about an hour. Sometime after this, Tortora threw the complainant's phone out the window.

Appellant stopped four times in the five hours it took them to get to Nacogdoches. The first stop was at a gas station to ask for directions. The complainant was unable to escape when appellant went inside the gas station because Tortora prevented it. The next stop was at a gas

station so Tortora could go to the restroom. Because of the number of people at the gas station, appellant drove around while waiting for Tortora so that the complainant could not signal for help. Appellant eventually arrived at a mobile home park in a small wooded area. He stopped and went inside a friend's house, leaving Tortora and the complainant in the van. The complainant said the area was "eerie" and "scary." Appellant came back within a few minutes.

The last stop was for gas at a Shell station on the main highway in Nacogdoches. It was about 2 a.m. and the store was closed, but the area was lit and a customer could pump gas by paying with a credit card. Appellant opened the van's sliding door to get the PIN from the complainant so he could use her card for gas; she gave him the PIN. She also told him she needed to go to the restroom, and he told her she could go on the ground. About the same time appellant was trying to enter the PIN and the complainant was trying to slide out of the van door to go to the restroom, a car approached the gas station and appellant got "spooked." He pulled or pushed the complainant out of the van and drove off, leaving her there. The complainant gestured to the people in the car to help her call 911, but they drove off. For some reason, though, they came back and let the complainant use a cell phone to call 911.

When officers arrived at the gas station, the complainant gave them a description of the van and three numbers on the license plate. One of the officers left the station to look for the van. The other officer had to have an interpreter to help him understand the complainant. Appellant and Tortora were stopped and arrested a short time later. Several hours later, the Nacogdoches police filled the van with gas and the complainant drove home to Dallas.

Tortora testified for the State at appellant's trial, and the jury convicted appellant of aggravated kidnapping. During the punishment phase of trial, the State introduced 23 photographs of appellant's tattoos. The tattoos were numerous and located on his torso, neck, face, arms, and hands. A Dallas police detective testified as an expert in gang documentation

and explained that several of appellant's tattoos (which included pentagrams, "666," the devil, a devil head with the letter "A," a Viking, and many others) were associated with the Aryan Brotherhood and white supremacist gangs. He said those gangs use a "broad range" of tattoos to signify their membership in the gang. The detective testified that prison gangs, such as the white supremacists, associate "together for protection inside the prison system." He also testified that when gang members are released from prison, "they still associate themselves with that group [and] go out and commit their criminal activity together."

The State also introduced evidence that appellant had been convicted four previous times for robbery, burglary of a vehicle, unauthorized use of a motor vehicle, and credit card abuse, and had spent time in prison.

## RELEASED IN A SAFE PLACE

The Texas Penal Code states that a person found guilty of aggravated kidnapping may offer evidence during the punishment phase that he voluntarily released the victim in a safe place. TEX. PENAL CODE ANN. § 20.04(d) (West 2011). If the convicted person proves the affirmative defense by a preponderance of the evidence, the offense is punished as a second-degree felony instead of a first-degree felony. *Id*. § 20.04(c); *Butcher v. State*, No. PD-1662-13, 2015 WL 359087, at *1 (Tex. Crim. App. Jan. 28, 2015). In issue one, appellant argues that he proved he released the complainant in a safe place, and that the evidence is insufficient to support the jury's rejection of his affirmative defense.

Whether a place is a "safe place" for purposes of the aggravated kidnapping statute is "a fact-specific inquiry made on a case-by-case basis, considering the totality of the circumstances." *Butcher*, 2015 WL 359087, at *4. The nonexclusive factors that may be considered in making this determination include "(1) the remoteness of the location, (2) the proximity of help, (3) the time of day, (4) the climate, (5) the condition of the complainant, (6) the character of the location

–4–

and surrounding neighborhood, and (7) the complainant's familiarity with the location or neighborhood." *Id*.

Appellant cites the legal sufficiency standard of review and argues that the following evidence was sufficient to prove by a preponderance of the evidence that he voluntarily released the complainant in a safe place:

- he pushed the complainant out of the van at the gas station;

- the gas station was on the main highway of Nacogdoches;

- the gas station was open to any drivers who wanted to purchase gas on credit;

- other "night places" were open at nearby highway locations;

- appellant's motive was to steal the van for transportation; the abduction was "unplanned and incidental."

We conclude that there is more than a scintilla of evidence that appellant did not release the complainant in a safe place. *See id*. at *5 (stating legal sufficiency standard of review for affirmative defense). The evidence at trial also showed that appellant forced the complainant out of the van because another car was approaching, not necessarily because he wanted to release the complainant; he left her at a closed gas station at 2 a.m. with no cell phone and no money; she did not have the ability to walk for help because of the disability in her legs; the weather was "pretty cold" and "pretty windy"; the complainant had no idea where she was and thought she might be in Tyler; the area of town had very low traffic at that time of the morning; and the complainant had difficulty communicating in English.

Based on all the circumstances, we conclude that there is more than a scintilla of evidence to support the jury's finding that appellant did not release the complainant in a safe place. We resolve issue one against appellant.

During the punishment phase of a trial, the trial court may admit evidence "as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character . . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2014). In issue two, appellant argues that the trial court abused its discretion by allowing the State to introduce 23 photographs of his tattoos, which the State contended showed membership in white supremacist gangs.

Evidence of gang membership is relevant in assessing a defendant's punishment because it relates to the defendant's character. *See id*.; *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995). Appellant contends, however, that the probative value of the photographs was outweighed by the prejudicial impact on the jury and the photographs should have been excluded under rule 403.

Rule 403 favors the admission of relevant evidence and presumes the evidence will be more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). An analysis under rule 403 includes the consideration of "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). In addition to these general factors, a trial court considers other factors when deciding whether to admit or exclude photographs under rule 403. *See Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (stating factors).

Although appellant cites the general rule 403 factors, he does not analyze them or apply them to the facts in this case. And he does not cite or analyze the factors related specifically to the admission or exclusion of photographs. Appellant generally argues that the photographs were unfairly prejudicial, but the jury sentenced him to 30 years for a crime that carried a

punishment range of 15 to 99 years or life. We cannot conclude that the trial court abused its discretion by admitting the photographs during the punishment phase of trial. We resolve issue two against appellant.

## MODIFICATION OF JUDGMENT

The judgment of conviction states that there were no enhancement paragraphs. However, the State alleged a prior robbery conviction for enhancement purposes, appellant pleaded not true to the allegation, and the jury found the enhancement paragraph true. We have the authority to correct the judgment of the court below to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we modify the judgment of conviction to state, "Plea to 1st Enhancement Paragraph: Not True" and "Findings on 1st Enhancement Paragraph: True."

## CONCLUSION

As modified, we affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

131590F.U05

–7–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

TOMMY EUGENE SIMMONS, Appellant

No. 05-13-01590-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F12-61499-L.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under "Plea to 1st Enhancement Paragraph:" the "N/A" is changed to "Not True." Under "Findings on 1st Enhancement Paragraph:" the "N/A" is changed to "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 9th day of February, 2015.