

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1662-13

### CHARLES E. BUTCHER, II, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TRAVIS COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. NEWELL, J., filed a concurring opinion. MEYERS, J., filed a dissenting opinion. JOHNSON, J., filed a dissenting opinion.

### O P I N I O N

The punishment level for aggravated kidnapping is reduced from a first-degree felony to a second-degree felony if the kidnapper "voluntarily releases the victim in a safe place." *See* TEX. PENAL CODE § 20.04(d). The court of appeals concluded that the evidence was legally and factually sufficient to support the jury's rejection of Appellant's mitigating defense of release in a safe place. *See Butcher v. State*, No. 11–11–00288–CR,

2013 WL 5891603, at *9 (Tex. App.—Eastman Oct. 31, 2013) (mem. op.) (not

designated for publication). We granted review to examine the holding of the court of

appeals,[1] and because we agree with the judgment of the court of appeals, we shall affirm.

On September 24, 2009, in the pre-dawn hours, the nine-year-old complainant (JG)

was walking alone down a long, dark, desolate driveway by herself from her

condominium complex to her school bus stop. Appellant approached her from behind,

grabbed her around the waist with one arm, covered her mouth with his other hand, and

threatened to cut her with a knife if she screamed.[2] Appellant then put JG on the

floorboard of his truck and drove her to his apartment. While she was in Appellant's car,

JG reached into her backpack claiming to look for a snack, but she grabbed her mobile

phone to seek help. Because it was still dark outside, Appellant saw the light from JG's

phone when she activated it, and he took it from her. He then pried the battery out with a

knife.[3] Once at Appellant's apartment, JG was put into a closet with her hands bound.

---

[1]The ground for review states,

> Whether the Court of Appeals' decision regarding the legal and factual sufficiency
> of the jury's rejection of Petitioner's punishment issue under Tex. Penal Code
> § 20.04(d) was substantively unreasonable in light of the legislative incentive to
> promote the release of kidnap victims under circumstances in which assistance is
> reasonably available.

[2]Although the defense disputed at trial whether Appellant held the blade of the knife
against JG's throat, she testified that the knife felt "cold" against her skin. Other record evidence
showed that the blade was sufficiently close to her throat that her DNA was found on the blade.

[3]JG's mother testified that she tried to track her daughter's location using the Global
Positioning System but was unable to locate her phone.

After eight hours Appellant decided to release JG. He put her back on the floorboard of his truck and drove her to an apartment complex near where she lived. But when she told him that she did not know how to get home from where they were, Appellant took her back to the site of the kidnapping and released her there.

JG returned home to an empty house: her mother was not there because she was at the police station. JG was unable to call anyone for help because Appellant still had her mobile phone, and JG and her mother did not have a home phone. JG walked to a neighbor's house and used their telephone to call her mother. A little while later, her mother and police arrived.

### CONSTRUING "SAFE PLACE"

Section 20.04 of the Texas Penal Code deals with aggravated kidnapping, and it states,

> (a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
> (1) hold him for ransom or reward;
> (2) use him as a shield or hostage;
> (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;
> (4) inflict bodily injury on him or violate or abuse him sexually;
> (5) terrorize him or a third person; or
> (6) interfere with the performance of any governmental or political function.
> (b) A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.
> (c) Except as provided by Subsection (d), an offense under this section is a felony of the first degree.
> (d) At the punishment stage of a trial, the defendant may raise the issue as

to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

TEX. PENAL CODE § 20.04.

When construing a statute, we first look to its literal language to ascertain its meaning. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). If the language of the statute is plain, then we interpret the statute according to that plain language. However, if the language of the statute is ambiguous or the plain meaning would lead to absurd results, then we examine extratextual sources to discern the meaning of the statute. *See Brown v. State*, 98 S.W.3d 180, 183 (Tex. Crim. App. 2003). We employ these rules of statutory construction to fulfill this Court's constitutional duty to construe the meaning of a particular statute in the way intended by the legislators who enacted the law. *See id.*; *Boykin*, 818 S.W.3d at 785–86.

## A. Arguments of Appellant

Appellant argues that certain facts adduced at trial supported his affirmative defense. For example, the fact that JG was released during the day, that she was released to the location from where she was abducted, that her mother would allow her to walk to and from the school bus stop by herself before this incident, that JG did not ask a passing mailman for help after she was released, and that JG's mother described JG as independent. However, we do not agree with Appellant that those facts warrant reversing the judgment of the court of appeals or the determination of the jury.

For example, the fact that Appellant released the complainant during the day is not dispositive of whether a place is "safe"; many places that are dangerous at night remain dangerous during the light of the day. In addition, other relevant facts in this case included that the complainant was a nine-year-old girl; she had lived at that condominium complex for only three months; Appellant released JG without her mobile phone, thus preventing her from seeking immediate help; and after being released, JG returned home to an empty home and had to leave it—after being kidnapped that morning near her home at knife point—to seek help. Also, after JG was kidnapped, her mother and JG no longer felt safe at the condominium complex, and the school adjusted the bus route to pick up and drop off JG directly in front of her condominium unit. Finally, although JG testified that she went to the home of a neighbor whom she knew and was comfortable with, she also did not ask for the neighbor's help despite their familiarity. Instead, she asked to use the phone to call her mother. Thus, while it was possible to infer that JG may have felt safe once she came upon the mailman because she did not ask for help, it is equally possible to infer that JG did not want to ask a stranger, or even a neighbor she was comfortable with, for help after being kidnapped by a stranger that morning so near her home. Moreover, a factfinder could infer that even an independent nine-year-old girl would be afraid to ask a passerby for help after suffering severe trauma by being kidnapped, having a knife held to her throat, and held, bound, for eight hours against her

will.[4]

**B. The term "safe place" is ambiguous, and the determination of whether a place is safe should be made on a case-by-case basis.**

We conclude that the term "safe place" as used in Section 20.04(d) of the Texas Penal Code is ambiguous because it is not defined in the Texas Penal Code and the term is susceptible to different meanings based on the facts of each case.[5] *See Brown*, 98 S.W.3d at 183 (holding that the term "voluntarily" was ambiguous as used in the language of the aggravated-kidnapping statute because it was "susceptible to different meanings, some of which would support holding that appellant's release of the victim was voluntary and some of which would support a contrary decision"). Likewise, we must resort to extratextual sources to determine the intent of the enacting legislators in their use of "safe release" defense.

---

[4]This is especially true after the punishment testimony of Dr. William Lee Carter that kidnapping—even when there is no physical injury—is categorized as one "the most violent types of offenses," next to murder and rape. But in this case, Appellant actually acted violently and used a deadly weapon to kidnap JG, and JG's DNA was recovered from the blade of the knife.

[5]No "place" can be definitively labeled "safe" because whether a place can be described as safe depends on the circumstances. *See, e.g.*, BLACK'S LAW DICTIONARY 1536 (10th ed. 2014) (defining the word "safe" as "[n]ot exposed to danger; not causing danger . . . ." or "[u]nlikely to be overturned or proved wrong."). We find the first definition the most helpful in the context of safe release, "[n]ot exposed to danger[.]"
With respect to the circumstances of the release, it may be safe to release an adult in a place that would be unsafe for a child, or a place that may be unsafe to release a mentally or physically disabled person could be safe to release a person not so disabled. Moreover, although releasing a kidnapping complainant at a hospital where the complainant can receive medical treatment and police assistance will probably always be safe, leaving a kidnapping complainant at a closed or vacant hospital likely would not be considered safe.

In *Brown*, this Court exhaustively reviewed the legislative history of the kidnapping statutes in Texas. *See Brown*, 98 S.W.3d at 184–87. We review that history, as it is germane to the issue of safe release.[6] The origins of the modern-day defense of release in a safe place can be traced back to the 63rd Legislature and its adoption of the 1973 Penal Code. Section 20.04 dealt with aggravated kidnapping, and subsection (b) was the safe-release defense. *See* Acts of May 25, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 915, 915 (current amended version at TEX. PENAL CODE § 20.04(d)).[7] And while many provisions of the new penal code were debated extensively, the Legislature spent relatively little time discussing what may constitute a safe place or how to define the term "voluntarily release"—which was the subject of this Court's opinion in

---

[6]Texas prohibited kidnapping and abduction as early as the adoption of the 1856 Penal Code. *See* Act of Aug. 28, 1856, 6th Leg., R.S., art. 1, arts. 515, 521, *reprinted in* 4 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 1043–44 (Austin, Gammel Book Co. 1898).

[7]The 1973 version of the aggravated kidnapping statute stated:

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
    (1) hold him for ransom or reward
    (2) use him as a shield or hostage
    (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony
    (4) inflict bodily injury on him or violate or abuse him sexually
    (5) terrorize him or a third person, or
    (6) interfere with the performance of any governmental or political function
(b) An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree.

TEX. PENAL CODE § 20.04 (1973).

*Brown. See Brown*, 98 S.W.3d at 182. However, three comments were made with respect to "safe place," and those were that leaving a person in twenty-degree weather in snow or tied to railroad tracks would not be a safe place, and that the determination of whether a place is a safe for purposes of the aggravated-kidnapping statute will usually be a fact-specific inquiry. We note that the case-by-case analysis suggested during the debates of the Legislature is supported by the examples the Legislature discussed and our conclusion that whether a place is safe necessarily turns on the circumstances of each case.

In addition, although the 1973 Practice Commentary to Section 20.04 notes that the aggravated-kidnapping provision was modeled after Section 212.1 of the Model Penal Code,[8] neither the 1973 Practice Commentary nor the comments to the Model Penal Code

---

[8]Section 212.1 of the Model Penal Code stated,

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he was found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:
>    (a) to hold for ransom or reward, or as a shield or hostage; or
>    (b) to facilitate commission of any felony or flight thereafter; or
>    (c) to inflict bodily injury on or to terrorize the victim or another; or
>    (d) to interfere with the performance of any governmental or political functions.
>    Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.

Model Penal Code, Section 212.1 (Official 1962 Draft and Revised Comments) (The American Law Institute 1980).

define "safe place." *See* Practice Commentary to Section 20.04, 259–61 (1989); Model Penal Code, Section 212.1 (Official 1962 Draft and Revised Comments) (The American Law Institute 1980).

In 1993, the 73rd Legislature amended Section 20.04 of the Texas Penal Code. Act of May 31, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3615, 3615 (the safe-release defense was moved to newly created subsection (c), the defense was turned into an affirmative defense, and the word "alive" was removed as a requirement of the defense). However, the amendments and accompanying legislative history reveal nothing about how the term "safe place" in the aggravated-kidnapping statute should be defined.[9] *See* Senate Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 1067, 73d Leg., R.S., at 4 (1993) (removing the word "alive" but noting that the 1993 amendments "make[] a nonsubstantive change" that "[a]llows a defendant, at the punishment stage of a trial, to raise the issue as to whether he voluntarily release the victim in a safe place . . ."). The next session, the 74th Legislature amended Section 20.04 of the Texas Penal Code again. Acts of May 29, 1995, 74th Leg., R.S., ch. 318, § 4, 1994 Tex. Gen. Laws 2735, 2735–36 (moving the safe-release defense to the new subsection (d) without substantive change and making subsection (c) a new offense). However, as with the 1993 amendments, the 1994 amendments do not shed any light on how the Legislature intended to define the

---

[9]One concern of the opponents to amending the 1973 Penal Code in the Texas House of Representatives was that changing the safe-release defense to an affirmative defense to be raised at punishment might have "seriously compromis[ed] constitutional rights." *See* House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. C.S.S.B. 1067, 73d Leg., R.S., at 20 (1993).

phrase "safe place." *See* Senate Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 15, 74th Leg., R.S. (1995) (noting that use or exhibition of a deadly weapon during an abduction would be added as an offense in subsection (c) and creating subsection (d) while redesignating subsections (b) and (c)). After examining the legislative history and debates concerning what a "safe place" is, we conclude that the Legislature intended for the definition of "safe place" to be a fact-specific inquiry made on a case-by-case basis, considering the totality of the circumstances.

### C. The opinion of the court of appeals and determining whether a place is safe.

To determine whether the place at which Appellant left the complainant was safe, the court of appeals stated that it would rely on seven factors developed by the Corpus Christi Court of Appeals: (1) the remoteness of the location, (2) the proximity of help, (3) the time of day, (4) the climate, (5) the condition of the complainant, (6) the character of the location and surrounding neighborhood, and (7) the complainant's familiarity with the location or neighborhood. *See Butcher*, 2013 WL 5891603, at *8; *Williams v. State*, 718 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1986), *aff'd in part and rev'd in part on other grounds*, 851 S.W.2d 282 (Tex. Crim. App. 1993). The court also explained that the factors it identified are "only aids" to be used after "considering all the surrounding circumstances existent in the case[.]" *Butcher*, 2013 WL 5891603, at *8. Applying those principles to the case at hand, the court of appeals concluded that the jury properly determined that the place at which Appellant released the complainant was not safe in this

case because, although the complainant was released at a location near to that of the abduction, there was testimony that the area was "desolate," the complainant was dropped off in the middle of the road, Appellant kept the complainant's mobile phone, and the complainant's family did not have a phone at their house. *Id.* at *8–9. The court of appeals also rejected Appellant's argument that releasing JG to the place from where she was kidnapped automatically supported a conclusion that the complainant was released in a safe place. The court distinguished a case in which the Fourteenth Court of Appeals concluded that a kidnapper released a college student in a safe place when he was released to the place from where he was kidnapped. *See Storr v. State*, 126 S.W.3d 647 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The court found the instant case distinguishable from *Storr* because, in that case, the college-aged complainant was released at a post office near his college during business hours, and the complainant had transportation available. *Id.* at 652–53. In contrast, the court of appeals noted that the complainant in this case was a nine-year-old girl, she was returned to the middle of a street, had no access to a phone or transportation, and "she returned home to an empty house." *Butcher*, 2013 WL 5891603, at *9.

While we have never expressly addressed the propriety of the seven factors identified by the court of appeals, we take this opportunity to do so now. We agree that reviewing courts may consider the seven factors listed by the court of appeals. However, we caution reviewing courts that the factors identified by the court of appeals are merely

nonexclusive[10] aids that may be considered to guide its determination under the totality of the circumstances of each case whether the place at which the complainant was released was "safe." With that background, we now turn to the court of appeals's assessment of the legal sufficiency and its application of the factual-sufficiency standard of review to the jury's finding rejecting Appellant's affirmative defense.

## LEGAL AND FACTUAL SUFFICIENCY OF MITIGATING AFFIRMATIVE DEFENSES

Affirmative defenses may be evaluated for legal and factual sufficiency, even after this Court handed down its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), which abolished factual-sufficiency review as it applies to criminal convictions. In a legal-sufficiency review of an affirmative defense, reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *See Matlock v. State*, 392 S.W.3d 662, 669–70 (Tex. Crim. App. 2013). The finding of the factfinder rejecting a defendant's affirmative defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and "no reasonable [factfinder] was free to think otherwise." *Id.* at 670.

---

[10]Because we hold that the determination of a "safe place" should be made considering the unique facts of each case, factors other than the seven identified by the courts of appeals may also be considered when reviewing a determination of whether a place is "safe" for purposes of Section 20.04(d) of the Texas Penal Code. For example, the court of appeals in this case determined that the age of the complainant in this case was significant. In another case, other factors may be important such as the competency of the complainant or whether the complainant has a physical disability.

In a factual-sufficiency review of a finding rejecting an affirmative defense, and unlike in a legal-sufficiency review, courts examine the evidence in a neutral light. *Id.* at 671. A finding rejecting a defendant's affirmative defense cannot be overruled unless, "after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id.*

**A. The court of appeals's analysis that the evidence was legally and factually sufficient was not unreasonable.**

The jury rejected Appellant's mitigating affirmative defense. The court of appeals affirmed the legal sufficiency of that finding. We agree. The record contains much more than a scintilla of evidence that the place at which Appellant released the complainant was not safe. To prevail on his legal-sufficiency claim, Appellant had to establish that the evidence conclusively proved his affirmative defense such that "no reasonable [factfinder] was free to think otherwise." He failed to do so, despite the fact that the court of appeals did not assess every single piece of evidence and state whether it supported Appellant's mitigating affirmative defense. Therefore, we affirm the judgment of the court of appeals that the evidence was legally sufficient for the jury to reject Appellant's defense.

In addition, we hold that the court of appeals correctly applied the factual-sufficiency standard of review when it concluded that that the finding of the jury rejecting Appellant's affirmative defense was not so much "against the great weight of the

evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id.* While this Court may not agree with every factfinder's determination of whether a place is safe or attach the same importance to each fact that the jury in this case did, we are loathe to substitute our own judgment for that of the factfinder simply because we may have reached a different result under the same facts. However, in this case, there was ample evidence that a reasonable jury could have concluded that the place at which Appellant released JG was not "safe" considering all of the surrounding circumstances. Moreover, the fact that some facts in the record *could* support Appellant's affirmative defense does not render the factual sufficiency of the jury's decision manifestly unjust, conscience-shocking, or clearly biased.

We affirm the judgment of the court of appeals.

Hervey, J.

Delivered: January 28, 2015

Publish