PD-0272-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/13/2015 11:09:13 AM
Accepted 4/15/2015 4:35:10 PM
ABEL ACOSTA
CLERK

**No. PD-0272-15**

IN THE

# TEXAS COURT OF CRIMINAL APPEALS

**AUSTIN, TEXAS**

GARY VISE, *APPELLANT/PETITIONER*

*v.*

STATE OF TEXAS, *APPELLEE/RESPONDENT.*

ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS CAUSE NO. 04-14-00077-CR

TRIED IN THE 186TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS TRIAL CAUSE NO. 2012-CR-9391

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

DAYNA L. JONES
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210) 255-8525
(210) 223-3248 – FAX
DAYNAJ33@GMAIL.COM

**ORAL ARGUMENT REQUESTED**

i

# IDENTITY OF PARTIES AND COUNSEL

**TRIAL JUDGE:**
Honorable Maria Teresa Herr, 186th District Court

**FOR THE STATE OF TEXAS:**
Karl Alexander – Counsel at trial
Bar No. 24036122
Jennifer McDaniel – Counsel at trial
Bar No. 24073196
Laura Durbin – Counsel on Appeal
Bar No. 24068556
Assistant District Attorneys
101 W. Nueva, 7th floor
San Antonio, Texas 78205
PHONE: 210-335-2311

**APPELLANT/PETITIONER'S COUNSEL:**

Kristin Dow – Counsel at Trial
Bar No. 24012548
214 Dwyer, Suite 302
San Antonio, TX 78204

Robert Porter – Counsel at Trial
Bar No. 24073196
115 E. Travis Street, Suite 746
San Antonio, Texas 78205

Dayna L. Jones – Counsel on appeal
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
206 E. Locust Street
San Antonio, Texas 78212
PHONE:  210-255-8525
Daynaj33@gmail.com

**FOURTH COURT OF APPEALS PANEL:**
Justice Marialyn Barnard – Authored the opinion

Chief Justice Sandee Bryan Marion
Justice Luz Elena D. Chapa

# TABLE OF CONTENTS

Parties to the Case ...................................................................................................i

Table of Authorities ...............................................................................................iv

Request for Oral Argument.......................................................................................1

Statement of the Case...............................................................................................1

Statement of Procedural History...............................................................................2

Grounds for Review .................................................................................................2

Argument and Authorities.........................................................................................3

Prayer for Relief.....................................................................................................13

Certificate of Service ..............................................................................................13

Certificate of Compliance .......................................................................................14

Appendix ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases:**

*Boykin v. State,* 818 S.W.2d 782.................................................................3

*Butcher v. State*, -- SW.3d--. 2015 WL 359087 (Tex.Crim.App.2015) ...............3,6

*Carrasco v. State*, 2012 WL 1174742 (Tex.App.-Amarillo, 2012) ....................5, 11

*Everhart v. State*, --S.W.3d--, 2012 WL 2928581 (Tex. App.—Houston, 2012) ....9

*Frizzell v. State*, --S.W.3d--, 2012 WL 5504009 (Tex. App.—Dallas 2012) ..........9

*Harrison v. State*, --S.W.3d --, 2012 WL 1813519 (Tex. App.—Texarkana, 2012) 8

*Patrick Marshall v. State*, PD-0509-14 and PD-0510-14 (PDR granted on Sept. 24, 2014) .................................................................................8

*Pratt v. State*, --S.W.3d--, 2013 WL 5675118 (Tex. App.—Ft. Worth, 2013) ........8

*Price v. State*, --S.W.3d—2014 WL 813808 (Tex. App.—Waco, 2014) .................8

*Ramos,* 303 S.W.3d at 307 .................................................................3

*Shipp v. State*, 331 S.W.3d 433 (Tex.Crim.App., 2011) ...........................................3

*Vise v. State*, No. 04-14-00077-CR (Tex. App. –San Antonio, Feb. 11, 2015) ....2, 5

**Rules:**

Texas House Bill 2066.................................................................6

Texas Penal Code §22.01.................................................................1

Texas Penal Code § 22.01 (a)(1) .............................................................. 1-3

Texas Penal Code §22.01(b)(2)(B) .......................................................1- 3, 7-8, 10

TEX. GOV'T CODE ANN. § 311.011 ....................................................3

Texas Rules of Appellate Procedure 68.4(d) .............................................1

Texas Rule of Appellate Procedure 9.3(i)(1) and (3) .............................................14

**STATEMENT REGARDING ORAL ARGUMENT**

Because the issue raised in this brief presents a novel issue that has not been decided by this Court and because it involves interpretation of a Texas Penal Code §22.01, oral argument will be helpful and is requested pursuant to Rule 68.4(d) of the Texas Rules of Appellate Procedure.

**STATEMENT OF THE CASE**

Petitioner was tried and convicted of the felony offense of Assault Family Violence by Strangulation in the 186th Judicial District Court in Bexar County, Texas. The jury assessed punishment at three (3) years probation. A Motion for New Trial was filed on November 22, 2013, but was denied. Appellant filed Notice of Appeal on January 31, 2014 and his conviction was affirmed on February 11, 2015. Petitioner complained on appeal that the evidence that the complainant, who screamed, talked and was able to breath with just a little difficulty during the entire incident, was insufficient to satisfy the elements of Texas Penal Code § 22.01 (a)(1) and (b)(2)(B) "impeding" the normal breathing or circulation of blood. In two other grounds, Petitioner complained that the trial court erred in instructing the jury on the doctrine of provocation because the evidence was insufficient and that Petitioner was entitled to a new trial because portions of the reporter's record was missing.

This petition challenges the appellate courts definition of the term "impede", its failure to address the legislative intent being this section of the penal code, as well as the sufficiency of the evidence.

## STATEMENT OF PROCEDURAL HISTORY

On February 11, 2015 the court of appeals affirmed the conviction in an unpublished opinion attached in the Appendix. *Vise v. State*, No. 04-14-00077-CR (Tex. App. –San Antonio, Feb. 11, 2015). The appellate court found that the evidence was sufficient to support the conviction and denied his other points of error as well. Petitioner did not request rehearing from the Fourth Court of Appeals.

## GROUNDS FOR REVIEW

**ISSUE ONE:**  The Court of Appeals erred in finding the evidence was sufficient to support a conviction for family violence assault by strangulation because the evidence failed to show that Petitioner "impeded" the complainant's normal breathing.

**ISSUE TWO:**  In defining the word "impede", the Court of Appeals decided an important issue concerning state law that has not, but should be, settled by the Court of Criminal Appeals.

**ISSUE THREE:**  Because the term "impede" is subject to differing definitions, the Court of Appeals erred by not addressing the legislature's intent in passing Texas Penal Code § 22.01 (a)(1) and (b)(2)(B) when defining the word "impede" in Petitioner's case.

**ISSUE FOUR:**  The Court of Appeals misconstrued the Legislature's intent of § 22.01 (a)(1) and (b)(2)(B) of the Texas Penal Code.

**ISSUE FIVE:**  The Court of Appeals' conclusion that "a rational jury could reasonably infer Vise applied enough pressure to make it difficult for Cherry to breathe normally" is not supported by the evidence.

2

**ARGUMENT AND AUTHORITIES**
**(Issues One – Five are Briefed Together)**

The offense of family violence assault by strangulation required the state to prove that Petitioner "intentionally, knowingly or recklessly caused bodily injury…by intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of [Donna Cherry] by applying pressure to [her] throat or neck…" Tex. Penal Code §22.01(a)(1) and (b)(2)(B); 4RR20.

The word "impeding" is not defined in the penal code and therefore its plain meaning or common understanding is used. *See Shipp v. State*, 331 S.W.3d 433, 441 (Tex.Crim.App.,2011) ["When a statutory term is not defined, we attempt to give effect to its plain meaning or common understanding. *Ramos,* 303 S.W.3d at 307; *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). The term is generally construed in context as the rules of grammar and common usage allow and utilizing the rules of statutory construction, unless it has acquired a technical or specialized meaning. TEX. GOV'T CODE ANN. § 311.011; *Boykin,* 818 S.W.2d at 785 n. 3."].

However, as this Court recently held, when a word is not specifically defined by statute and is susceptible to different meanings, "we must look to the legislative history and extra-textual sources to determine the legislative intent behind the" word. *Butcher v. State*, -- SW.3d--. 2015 WL 359087, 10 (Tex.Crim.App.2015)["The term 'safe place' is not defined in the statute.

Because the term is not defined and because it is susceptible to different meanings, we must look to the legislative history and extra-textual sources to determine the legislative intent behind the safe-release affirmative defense."]

Varying dictionary sources define the term impede differently. For example, Black's Law Dictionary defines "impede" as "to obstruct; hinder; check; delay." Black's Law Dictionary 753 (6th ed. 1990). Black's also defines "obstruct" as "to hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow…To block up; to interpose obstacles; to render impassable; to fill with barriers or impediments, as to obstruct a road or way. To impede; to interpose impediments to the hindrance or frustration of some act or service, as to obstruct an officer in the execution of his duty." Black's Law Dictionary 1077 (6th ed. 1990).

But, according to Merriam-Webster's Online Dictionary, impede is "to slow the movement, progress, or action of (someone or something)" or "to interfere with or slow the progress of." *See* Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/impede?show=0&t=1400520920 (last visited May 19, 2014).

Also, according to the Oxford Desk Dictionary and Thesaurus, impede is to "retard by obstructing; hinder." Oxford Desk Dictionary and Thesaurus, 390 (Amer. ed. 1997). Synonyms used in the Oxford Desk Dictionary and Thesaurus for impede

4

are "obstruct, bar, block, thwart, check, hinder, balk." *Id*. All of the dictionary definitions and synonyms from various sources for the word "impede" explain that there is some sort of stop, block or obstruction that, at a minimum, slows the progress of a particular action.[1]

The Court of Appeals relied solely on one dictionary definition of impede and held that the "verb impede suggests performing an act that interferes with or hinders something. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 623 (11th ed. 2003)." *Vise v. State*, No. 04-14-00077-CR, Op. at p. 5. The Court of Appeals even noted that "[w]hen used in this context, the verb impede suggests applying pressure to a person's throat or neck or blocking a person's nose or mouth to such an extent it interferes or hinders his or her ability to breathe or circulate blood normally." *Id*. The Court of Appeals relied on this definition from *Carrasco v. State*, 2012 WL 1174742, 3 (Tex.App.-Amarillo,2012). ["The idea of impeding connotes interference or hindrance. *See* MERRIAM–WEBSTER'S COLLEGIATE DICTIONARYY 623 (11th ed.2003) (so defining the word)."]

However, in *Carrasco,* the court relied on the complainant's "statement that she was able to breath for a 'majority' of the time" as "some evidence that the

---

[1] During closing, the Sate argued impede required that air or blood was restricted: "What he has to do is put enough pressure on her throat to restrict her air flow, to restrict the blood flow." 5RR101.

pressure applied by appellant to her throat obstructed or hindered her breathing at one point, though not throughout the choking episode." *Carrasco* at *3.

Because the differing definitions of impede range from obstruction, stop or block to interference or hinder, the term is susceptible to differing meanings and the Court of Appeals was required to turn to the "legislative history and extra-textual sources to determine the legislative intent behind the" word. *Butcher* at *10.

**Legislative History and Extra-Judicial Sources**

Texas House Bill 2066 amended Texas Penal Code §22.01 to add the felony offense of assault family violence by strangulation[2]. Analyzing the Legislature's intent behind passing HB 2066, it is clear that the legislature intended to increase the penalties for domestic violence cases involving "strangulation or suffocation." *See* H.B. 2066, 2009 81st Leg., R.S. (Tx. 2009); *See also* House Comm. On Criminal Jurisprudence Report, Bill Analysis, Tex. H.B. 2066, 81 st Leg., R.S.. (2009); *See also* Senate Comm. On Criminal Justice, Bill Analysis, Tex,. C.S.H.B. 2066, 81 st Leg., R.S.. (2009). Throughout the analysis of H.B. 2066, the Legislature repeatedly referred to the need of this bill to make cases of "strangulation or suffocation" a

---

[2] An article on the Texas District and County Attorney's Association website explains the clinical definition of "strangulation": "… strangulation is clinically defined as a lack of oxygen characterized by closure of the blood vessels and/or air passages of the neck as a result of external pressure on the neck." Wilbanks, Shelly, *"The police report says he choked her—how do I prove it?" available at* http://www.tdcaa.com/node/5749 (last visited May 27, 2014). Thus, according to this article, strangulation cases require a lack of oxygen.

felony offense. *Id.* The acts of strangling and suffocating entail either killing someone by blocking their air or depriving someone of air. *See* Merriam-Webster Online Dictionary, *available at http://www.merriam-webster.com/dictionary/suffocate* (last visited May 12, 2014) ["Suffocate: a (1) **:** to stop the respiration of (as by strangling or asphyxiation) (2) **:** to deprive of oxygen b **:** to make uncomfortable by want of fresh air"]; *See also* Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/strangle (last visited May 12, 2014) ["Strangle: *a* **:** to choke to death by compressing the throat with something (as a hand or rope) **:** *b* **:** to obstruct seriously or fatally the normal breathing of."].

Looking at the Texas Legislature's intent behind Texas Penal Code §22.01(b)(2)(B), it is clear that the legislature was seeking to criminalize "strangulation" or "suffocation" under this section, thus in determining how the term "impede" should be used in this Penal Code section, there must be some sort of stopping, serious obstruction or deprivation of oxygen. Thus, when a complainant states that it was just a "little bit" difficult to breath, the testimony is not sufficient to support the legislature's intent when drafting this section of the penal code. By the Court of Appeals analysis and holding, any slight amount of pressure, even a finger (which placed over someone's throat makes it uncomfortable to breath

7

normal), can alter someone's normal breathing and would constitute felony strangulation.

Few courts throughout Texas have discussed the issue of what constitutes "impeding normal breathing or circulation of the blood". Currently pending before this Court is *Patrick Marshall v. State*, PD-0509-14 and PD-0510-14 (PDR granted on Sept. 24, 2014). One issue in that case asks this Court to determine whether the evidence was sufficient to support impeding the normal breathing where the Petitioner put a pillow over the complainant's face an she had difficulty taking deep breaths. Thus, it is clear that there is little guidance on this issue from appellate courts and this Court must provide guidance for lower courts on how to interpret the term impede.

The majority of Appellate Courts that have reviewed cases involving Texas Penal Code §22.01(b)(2)(B) all centered around the victim not being able to breath. *See Harrison v. State*, --S.W.3d --, 2012 WL 1813519 (Tex. App.—Texarkana, 2012)[Complainant testified that Appellant "put his hands around her neck and that she could not breathe."]; *Price v. State*, --S.W.3d—2014 WL 813808 (Tex. App.—Waco, 2014)[Complainant testified that Appellant "grabbed her by the throat so that she could not breathe."]; *Pratt v. State*, --S.W.3d--, 2013 WL 5675118 (Tex. App.—Ft. Worth, 2013)[The victim was observed to have redness and abrasions around her face and neck and victim testified that Appellant put his hands around her neck,

started to squeeze her throat and that she could not breathe. Complainant was able to get free but then he choked her again, she could not breathe for 15-20 seconds, and she could not speak during this time. He then choked her a third time but she was able to break free to call for help."]; *Frizzell v. State*, --S.W.3d--, 2012 WL 5504009 (Tex. App.—Dallas 2012)[Victim was strangled until she lost consciousness, she then regained consciousness and Frizzell strangled her again. The complainant had red marks around her neck and broken blood vessels around her eyes."]; *Everhart v. State*, --S.W.3d--, 2012 WL 2928581 (Tex. App.—Houston, 2012)[Everhart lifted the complainant up off the ground by her throat and choked her until she lost consciousness. Officers witnessed her neck, eyes, head and lips were bruised and swollen].

### Normal Breathing Was Not Impeded in this Case

Donna Cherry testified that Appellant was applying pressure to her neck, but when asked "Was it difficult to breathe?" she responded "Little – a little bit, yes." 4RR43. When asked whether she was able to scream to her full volume, she responded "No…Because his hands were impeding that process." *Id*. However, Donna testified that she did yell loud enough to wake up the neighbor.[3] 4RR43-44.

---

[3] No medical testimony was presented during the case, however, it is important to note that in order to talk or scream, air passing through a person's airway is necessary. "Air is crucial to voice production. It is the flow of air through the various constrictions in the vocal tract that generates sound, and air is also the medium which transmits that sound to our ears." *See* "Lung Pressure and Power: a Potpourri of Topics", *available at*

She also was able to speak and communicate to Appellant during the incident. 4RR44. Donna, at all times, was able to breath throughout the incident, had minimal redness on her neck that was only noticeable in a lot of light, and she was able to scream and talk throughout the incident. It is important to emphasize that the only thing she stated was impeded was her ability to scream at full volume. 4RR43.

Furthermore, on cross-examination, Officer Martinez was asked whether it made sense "if someone can't breathe, they can still scream?" and he replied: "If they can't breathe they can't scream, no, sir." 5RR28.

There is no evidence in Petitioner's case that Donna's normal breathing was ever hindered, obstructed, restricted or impeded in any way that satisfies the Texas §22.01(b)(2)(B) or the Legislature's intent behind this law. Donna was able to breathe normally throughout the entire incident with, according to her, only a little bit of difficulty. This testimony does not amount to her normal breathing being interfered with or hindered as required by the Penal Code's term of "impeding." The incident also does not rise to level of "strangulation" or "suffocation" as the Legislature intended when passing this bill.

---

http://www.ncvs.org/ncvs/tutorials/voiceprod/tutorial/lung.html, last visited May 20, 2014. (www.nvcs.org is the website for the National Center for Voice and Speech. According the site's homepage, "The NCVS is a multi-site research and teaching organization dedicated to studying the characteristics, limitations and enhancements of human voice and speech." *Id.*)

Finally, Donna's testimony that she could not scream to her full potential because Appellant's hands were "impeding" does not satisfy an element of the offense. 4RR43. Impeding someone's ability to scream is not relevant to impeding someone's normal breathing.

Viewing the evidence in the light most favorable to the verdict, the evidence was insufficient to support Petitioner's conviction for impeding the normal breathing. There was no evidence that Donna was ever without oxygen and she was to take normal breaths, with only minimal difficulty, throughout the entire incident.

**Normal Circulation of Blood Was Not Impeded**

Furthermore, there was no testimony or evidence that the normal circulation of her blood was impeded nor was there any medical testimony, like there was in *Carrasco*, to explain that any blood circulation was impeded. Culp testified that Donna had a little bit of redness on her neck but you could not see it without a lot of light. 4RR106. There was no bruising around her neck. Culp checked her airway with a pen light to see if there was anything cut or swollen, but her throat was fine and there was no obstructions or permanent damage or anything. 4RR108. Donna did not have any trouble breathing. 4RR106-107. Culp also testified that she was not feeling dizzy or lightheaded either. 4RR107. Culp reiterated that there was just a little bit of redness. *Id*. Donna did complain of feeling pain like she had been

intubated, however, there was no evidence presented that this feeling resulted from her normal breathing or blood circulation being impeded.

Culp recommended that she go see a doctor or go to the emergency room, but Donna declined. 4RR108. There were no issues with her airway or with her circulation. 4RR112-113. There were no issues with her trachea. 4RR118. Aside from very light redness, her throat had no signs of trauma and there was no swelling. 4RR119.

There was no testimony that any redness around her throat was a result of her normal blood circulation being impeded. In fact, there was no testimony regarding Donna's blood circulation being impeded at all due to Appellant's hands applying pressure on her neck. In fact, Culp testified that he checked her circulation which did not present any issues. 4RR113.

There was no evidence that Appellant impeded to the normal circulation of Donna Cherry's blood and therefore the evidence is insufficient to support the conviction.

## CONCLUSION

It is necessary for this Court to provide guidance and direction to lower courts and attorneys in Texas to ensure that the legislature's intent behind the family violence by strangulation statute is being applied consistently throughout Texas.

12

Guidance by this Court will also ensure that Texas is not convicting men and women of felonies when the evidence does not support it.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Petitioner prays this Court grant this Petition for Discretionary Review, reverse the Fourth Court of Appeals' opinion affirming the conviction and remand Petitioner's case for a new trial or reverse and enter a judgment of acquittal because the evidence was legally insufficient to support his conviction.

Respectfully submitted:

_/s/Dayna L. Jones_
Dayna L. Jones
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210)-255-8525– office
(210)-223-3248—fax
Daynaj33@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent *via* U.S. Mail to the Bexar County District Attorney's Office located at 101 W. Nueva, San Antonio, TX 78205 and to the State Prosecuting attorney located at P.O. Box 13046 Austin, Texas 78711-3046 on April 12, 2015.

_/s/Dayna L. Jones_
DAYNA L. JONES

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.3(i)(1) and (3), I certify that, according to Microsoft Word's word count, this document contains **3,070** words.

_/s/Dayna L. Jones_
DAYNA L. JONES

# APPENDIX



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00077-CR

Gary **VISE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CR-9391
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 11, 2015

AFFIRMED

A jury found appellant Gary Vise guilty of the offense of assault–family violence by strangulation.  Based on the jury's recommendation, the trial court sentenced Vise to three years' confinement, but probated the sentence and placed Vise on community supervision for three years. On appeal, Vise contends: (1) the evidence is insufficient to support his conviction; (2) the trial court erred by instructing the jury on the doctrine of provocation because the evidence is insufficient to support it; and (3) he is entitled to a new trial because portions of the reporter's record are missing.  We affirm.

**BACKGROUND**

Vise was indicted for assault–family violence by choking or strangulation on November 14, 2012. At trial, Officer Hale Poloa testified he responded to a family disturbance call that led him to the home of Vise and Donna Cherry. Officer Poloa stated that when he arrived, Vise was standing in the front yard. The officer placed Vise in handcuffs to detain him. Shortly thereafter, Sergeant Gilberto Martinez arrived. At trial, Sergeant Martinez testified he spoke to Cherry and observed redness on her neck as if someone grabbed it and held it long enough to leave a skin burn. He testified that after he observed Cherry's injuries, an EMT technician, Colin Culp, from the Converse Fire Department examined Cherry. According to Culp, Cherry's throat did not sustain any permanent injury, but there were red marks on her neck. Culp testified he advised Cherry to seek medical attention if she continued to have breathing problems.

Cherry testified she and Vise were living together as boyfriend and girlfriend. One evening, after doing yard work all day, they, along with her son, sat down together for dinner. Cherry testified Vise seemed moody and snapped at her son after he spilled milk during dinner. Cherry testified that after dinner, she cleared the table and took her son to the spare room to watch movies. Cherry stated she and Vise began drinking alcohol, but she stopped after sensing tension from Vise. She testified she repeatedly asked him what was wrong, but her questions seemed to make him more agitated. At that point, Cherry checked on her son and told him to turn up the volume and not to open the door for anyone except her or the police.

According to Cherry, when she returned from checking on her son, Vise was outside the house. She went outside and asked him why he was upset. Cherry testified their discussion became heated and she felt threatened by Vise. She stated she told Vise to stop threatening her and then "popped" a glass bottle at him. The bottle broke against his chest, and Vise reacted by throwing his beer bottle on the ground, lifting Cherry up by her arms, and throwing her to the

ground. Cherry stated that once she was on the ground, Vise "straddled" her and placed his hands around her throat. Cherry testified Vise applied pressure to her neck and made it "a little bit" difficult to breathe. Unable to move, she screamed but was unable to achieve full volume because Vise's hands were around her throat. At that moment, a neighbor's back light came on, and Vise released Cherry. Cherry testified he left the house and she called a friend and 911.

At the close of trial, defense counsel requested an instruction on self-defense, and the State requested an instruction on provocation. The trial court granted both requests. Ultimately, a jury found Vise guilty of the felony offense of assault–family violence by strangulation. Vise was sentenced to three years' confinement, probated. Thereafter, Vise perfected this appeal.

## ANALYSIS

As noted above, Vise raises three complaints on appeal. First, he contends the evidence is insufficient to support his conviction. He also asserts the trial court erred when it instructed the jury on the doctrine of provocation because according to Vise, the evidence is insufficient to support a provocation instruction. Finally, Vise claims he is entitled to a new trial because portions of the reporter's record are missing.

### *Legal Sufficiency*

In his first issue, Vise claims the evidence is insufficient to prove he committed the offense of assault–family violence by strangulation. Specifically, Vise argues Cherry's testimony regarding her ability to breathe, combined with her admission that she could scream for help, rendered the evidence insufficient to prove her normal breathing or blood circulation was impeded during their confrontation.

### *Standard of Review*

In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we use the standard set out by the Supreme Court in *Jackson v. Virginia*. *Brooks v. State*, 323

S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). Under this standard, we examine all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Orellana v. State*, 381 S.W.3d 645, 652–53 (Tex. App.—San Antonio 2012, pet. ref'd) (quoting *Mayberry*, 351 S.W.3d at 509). Under this standard, the jury maintains full responsibility of resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Orellana*, 381 S.W.3d at 653 (quoting *Jackson*, 443 U.S. at 319).

Accordingly, we must defer to the jury's weighing of the evidence, resolution of conflicts in the testimony, and assessment of credibility. *Brooks*, 323 S.W.3d at 899; *Orellana*, 381 S.W.3d at 653 (citing *Jackson*, 443 U.S. at 319). We must resolve any inconsistencies in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). We must also remain mindful that we cannot reweigh the evidence or substitute our judgment for that of the jury. *Orellana*, 381 S.W.3d at 653 (citing *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to their testimony, and the jury may accept or reject all or any portion of a witness's testimony. *Orellana*, 381 S.W.3d at 653 (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

*Application*

As noted, the jury convicted Vise of the felony offense of assault–family violence by strangulation. To obtain a conviction for this offense, the State must prove beyond a reasonable doubt that the accused "intentionally, knowingly, or recklessly caused bodily injury . . . by intentionally, knowingly, or recklessly *impeding* the normal breathing or circulation of the blood

- 4 -

of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2011) (emphasis added). The verb "impede" is not defined in the Penal Code, and therefore, we must determine its plain meaning under the statute. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) ("When analyzing the sufficiency of the evidence, undefined statutory terms 'are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance.'"); *see Shipp v. State*, 331 S.W.3d 433, 441 (Tex. Crim. App. 2011). When determining the meaning of an undefined term in a statute, we may consult standard dictionaries. *Clinton*, 354 S.W.3d at 800.

The verb impede suggests performing an act that interferes with or hinders something. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 623 (11th ed. 2003). When used in this context, the verb impede suggests applying pressure to a person's throat or neck or blocking a person's nose or mouth to such an extent it interferes or hinders his or her ability to breathe or circulate blood normally. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). Now, we must look to the evidence to see whether any rational jury could have found Vise applied pressure to Cherry's throat such that he interfered with or hindered her ability to breathe normally. *See Orellana*, 381 S.W.3d at 652–53.

According to Vise, the evidence is insufficient to prove he impeded Cherry's ability to breathe normally because she testified she had little difficulty breathing and could scream loud enough to call for help. Vise's argument, however, implies Cherry's breathing had to be completely cut off for it to be "impeded" under the statute. We disagree based on the plain meaning of the term. The statute does not require a victim to be completely unable to breathe. Rather, a victim's breath or blood circulation need only be hindered or interfered with. Here, Cherry testified both of Vise's hands were applying pressure around her neck, and it was "a little bit"

difficult for her to breathe and she could not scream fully because "his hands were impeding that process." On cross examination, Cherry added that Vise wrapped his hands around her neck long enough to hurt her. Accordingly, we hold Cherry's testimony is some evidence that the pressure applied by Vise to her throat interfered with or hindered her normal breathing.

In addition to Cherry's testimony, the jury heard testimony from Culp, the EMT technician, who testified Cherry exhibited redness around her throat. Moreover, Sergeant Martinez testified the front of Cherry's neck was red and you could tell someone grabbed her and held her neck long enough to leave a skin burn. Accordingly, we hold a rational jury could reasonably infer Vise applied enough pressure to make it difficult for Cherry to breathe normally. When viewed in the light most favorable to the verdict, we hold the cumulative force of all the evidence is sufficient to support the conviction.

### *Jury Charge*

In his next issue on appeal, Vise contends the trial court reversibly erred by instructing the jury on the doctrine of provocation. According to Vise, the evidence is insufficient to support the instruction because there was no evidence Vise did any act or used any words that provoked an attack by Cherry.

### *Standard of Review*

We follow a two-step process when analyzing jury charge issues on appeal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Cornett v. State*, 405 S.W.3d 752, 757 (Tex. App.— Houston [1st Dist.] 2013, pet. ref'd.). First, we must determine whether error exists, and second, if we determine error exists, then we must determine whether the error caused sufficient harm to warrant a reversal. *Ngo*, 175 S.W.3d at 743; *Cornett*, 405 S.W.3d at 757. The amount of harm necessary to warrant a reversal depends on whether the appellant objected to the jury charge. *Ngo*, 175 S.W.3d at 743 ("Preservation of charge error does not become an issue until we assess harm.").

Under the well-recognized *Almanza* standard, if the appellant objected to the complained of portion of the jury charge, then he need only show he suffered some harm as a result of the error to obtain a reversal. *Ngo*, 175 S.W.3d at 743 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). On the other hand, if the appellant failed to object to the complained of portion of the charge, then he must show he suffered egregious harm to be entitled to a reversal. *Id*. Accordingly, we will first address whether any error in the charge existed.

*Application*

A jury instruction on the doctrine of provocation restricts a defendant's right to claim self-defense.[1] *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998); *Kennedy v. State*, 193 S.W.3d 645, 654 (Tex. App.—Fort Worth 2006, pet. ref'd.). The instruction is required when: (1) the evidence is sufficient to show the defendant performed some act or said some words that provoked the attack on him, (2) the act or words were reasonably calculated to provoke the attack, and (3) the act was performed or the words were said for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other person. *Smith*, 965 S.W.2d at 513; *Harrod v. State*, 203 S.W.3d 622, 628 (Tex. App.—Dallas 2006, no pet.). Each of these required elements are questions of fact and may be proved by circumstantial evidence. *Smith*, 965 S.W.2d at 513; *Harrod*, 203 S.W.3d at 628; *Fink v. State*, 97 S.W.3d 739, 742 (Tex. App.—Austin 2003, pet. ref'd.). Under this analysis, we must determine whether, viewing the evidence in the light most favorable to giving the instruction, there was sufficient evidence from which a rational jury could have found each element of provocation beyond a reasonable doubt. *Smith*, 965 S.W.2d at 514; *Harrod*, 203 S.W.3d at 628; *Fink*, 97 S.W.3d at 742.

---

[1] However, in this case, the trial court made a Solomon-like decision, giving the jury both a provocation and a self-defense instruction.

Here, Cherry testified Vise was irritable throughout dinner and appeared to become more upset after she asked him what was wrong. She testified that when she went outside to talk to Vise, he said something about her or her son that she could not remember, but it made her feel threatened. Cherry testified he also told her if she hit him like a man, then he would hit her back like one. Cherry stated that at that point, she "popped" a bottle at him. Based on this evidence, we hold the first element of the provocation doctrine is met. The evidence establishes Cherry felt threatened by Vise's irritability and Vise used words that Cherry found threatening and ultimately caused her to attack him. Cherry's testimony permits a jury to infer beyond a reasonable doubt that Cherry threw a bottle at Vise after he goaded her with words.

With regard to the second element of the provocation doctrine, Vise's words were leveled directly at Cherry and her son, and we hold a rational jury could find that such words were reasonably calculated to provoke Cherry. *See Smith*, 965 S.W.2d at 514 (highlighting acts or words directed at victim or third party can be found to provoke difficulty). Although Vise highlights the fact that Cherry did not remember everything that was said verbatim, the evidence is not required to establish exactly what words or act caused the provocation. Rather, the jury must merely be able to find that some provoking words or act exist. *Id.* at 515.

Finally, a rational jury could find that Vise's threat to hit Cherry like a man if she hit him first was said as a pretext to allow Vise to harm Cherry, thereby establishing intent. *Id.* at 513. Intent is a question of fact that can be determined from circumstantial evidence, and the jury could have found beyond a reasonable double that Vise's words were purposely used to provoke an attack by Cherry, giving him an excuse to attack her. *See id.* at 517.

Based on the foregoing evidence, we hold the evidence is sufficient to show Vise provoked the attack by Cherry, his acts or words were reasonably calculated to provoke the attack, and he

did what he did and said what he said with the intent that she attack him so he would have a pretext for inflicting harm on her. *Id.* at 513.

Because sufficient evidence exists on each element of provocation, we hold the trial court did not err by giving the provocation instruction. Accordingly, we need not conduct a harm analysis. We overrule this issue.

### Reporter's Record Missing

Finally, Vise asserts he is entitled to a new trial because a portion of the reporter's record is missing. Vise argues the missing portion of the record is significant and necessary to his appeal because that part of the record may contain an objection to the jury charge. Vise points out that whether an objection to the jury charge on provocation was made is important to this appeal because it determines what type of harm analysis must be applied.

### Standard of Review

Under Rule 34.6(f) of the Texas Rules of Appellate Procedure, an appellant is entitled to a new trial if: (1) he timely requested a reporter's record; (2) a significant exhibit or portion of the court reporter's notes and records have been lost or destroyed through no fault of his own; (3) the missing portion of the reporter's record or exhibit is necessary to the resolution of the appeal; and (4) the missing portion of the reporter's record or exhibit cannot be replaced by agreement of the parties. TEX. R. APP. P. 34.6(f); *Routier v. State*, 112 S.W.3d 554, 570 (Tex. Crim. App. 2003). To determine whether the rule's requirements are met, we must view the circumstances from the appellant's point of view and resolve any reasonable doubt in favor of the appellant. *Routier*, 112 S.W.3d at 570.

### Application

Here, the record reflects the trial court excused the jury for lunch and then heard arguments regarding the self-defense charge, which were transcribed. The court then adjourned for lunch,

and when it reconvened, the trial court stated the evidence raised both a provocation and self-defense issue. The trial court advised the parties they could argue if they wished, but it had reviewed the law and made a decision. The trial court then asked if there was anything else the parties wanted to raise before the jury was seated. When the trial court confirmed no other issues regarding the charge were going to be raised, the court reporter interjected, stating, "Judge, just, their arguments for the charge were on the record and I didn't get –." The trial judge then stated, "What I'm saying is I'm granting the request for the self-defense charge and I'm granting the State's request for the provoking the difficulty charge. And is there anything else we need to take up before I seat the jury?" Neither side objected.

After reviewing the record, we hold that if any part of the reporter's record is lost or destroyed, it was not without the fault of Vise's counsel. Here, the record reflects the arguments regarding the self-defense charge were transcribed, but the arguments regarding the doctrine of provocation were not. When the court reporter informed the trial court and the parties that she was unable to transcribe all of the arguments, the trial court gave both parties an opportunity to put any missing argument on the record. Instead of restating the argument or repeating an objection, Vise's counsel did not put the complained of missing information on the record. In fact, Vise was given several opportunities to confirm any objection made to the jury charge was on the record; first, when the court reporter told the trial judge she missed some information before the proceedings continued, and again, when the trial judge asked for any objections before the charge was submitted to the jury. Accordingly, Vise failed to show how the reporter's record was lost through no fault of his own.

Furthermore, the missing portion of the reporter's record is not necessary to the resolution of the appeal because whether an objection to the provocation charge was made is irrelevant. Vise argues the missing portion of the record could have contained an objection to the jury charge and

whether an objection was made is significant because it determines what type of harm analysis to apply when determining whether the trial court correctly instructed the jury. However, as stated above, we need not conduct a harm analysis because the trial court did not err when instructing the jury on the doctrine of provocation. Therefore, determining what type of harm analysis to apply is irrelevant. Accordingly, we overrule Vise's last issue on appeal.

## CONCLUSION

Based on the foregoing, we overrule Vise's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish