1312-15

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXAS
AUSTIN, TEXAS

| | | |
|---|---|---|
| STEVEN LEE GORDON<br>(Petitioner)<br><br>v.<br><br>THE STATE OF TEXAS<br>(Respondent) | §<br>§<br>§<br>§<br>§<br>§<br>§ | NO.  PD-1312-15 |

ON PETITION FOR DISCRETIONARY REVIEW FROM THE DECISION OF
THE COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
DALLAS, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 18 2015

Abel Acosta, Clerk

IN CAUSE NO. 05-14-00824-CR
DISMISSING PETITIONER'S APPEAL
OF TRIAL CAUSE NO. 219-81751-2013

HONORABLE SCOTT BECKER, JUDGE PRESIDING
FROM THE 219th DISTRICT COURT
COLLIN COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

DEC 18 2015

Abel Acosta, Clerk

**PETITION FOR DISCRETIONARY REVIEW**

STEVEN GORDON
TDCJ #1934396
Mark W. Stiles Unit
3060 FM 3514
Beaumont, TX  77705

Pro Se Representation

## IDENTITY OF PARTIES AND COUNSEL

A complete list of the names of all interested parties is provided below so that the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Presiding Judge at Trial:**
Honorable Scott Becker, District Court Judge
219th Judicial District Court
Collin County Courthouse
2100 Bloomdale Road
McKinney, Texas  75071

**Attorneys for the State at Trial:**
Mr. Brandon Wonnacott, Esq. (State Bar #24061309)
    - and -
Ms. Cynthia Walker, Esq. (State Bar #24014843)
District Attorney's Office
2100 Bloomdale Road, Ste. 100
McKinney, Texas  75071

**Attorney for the State on Appeal:**
Mr. John R. Rolater, Esq. (State Bar #00791565)
District Attorney's Office
2100 Bloomdale Road, Ste. 100
McKinney, Texas  75071

**Attorneys for Defendant at Trial:**
H. David Waddill, Esq. (State Bar #20630050)
    - and -
Mr. Brock Duke, Esq. (State Bar #24040833)
206 S. Kentucky, Ste. 101
McKinney, Texas  75069

**Attorney for Appellant on Appeal:**
Mr. Jesse R. Allen, Esq. (State Bar #24040412)
The Law Office of Jesse R. Allen, PLLC
5900 S. Lake Forest Drive, Ste. 300
McKinney, Texas  75070

**Petitioner:**
Steven L. Gordon
Pro Se Representation
TDCJ #1934396
Mark W. Stiles Unit
3060 FM 3514
Beaumont, Texas  77705

# TABLE OF CONTENTS

Identity of Parties and Counsel ........................................ i

Table of Contents ...................................................... ii

Index of Authorities ................................................... iii

Statement Regarding Oral Argument ...................................... 1

Statement of Procedural History ........................................ 1

Statement of the Case .................................................. 2

Summary of the Arguments [restated] .................................... 3

Ground for Review #1

Did the Fifth District Court of Appeals err in determining whether
the evidence was legally and factually insufficient to support the
jury's rejection of Petitioner's renunciation defense?

Ground for Review #2

Did the Fifth District Court of Appeals err in determining that
the evidence was not legally and factually insufficient to support
the trial court's rejection of Petitioner's renunciation mitigation
issue at punishment?

Ground for Review #3

Did the Fifth District Court of Appeals abuse its discretion by
illegally amending an existing Penal Code in order to sustain a
wrongful conviction?

Arguments ............................................................. 4

Ground #1 ............................................................. 4

Ground #2 ............................................................. 8

Ground #3 ............................................................. 9

This Honorable Court Should Grant Review In This Case ................. 11

Conclusion and Prayer for Relief ..................................... 11

Certificate of Service ............................................... 12

Appendix ............................................................. 13

A   Memorandum Opinion of the Fifth District Court of Appeals,
    Steven Lee Gordon v The State of Texas, Cause No. 05-14-00824-CR
    August 20, 2015

## STATEMENT REGARDING ORAL ARGUMENT

In the event the within Petition for Discretionary Review is granted by this Honorable Court, Petitioner requests oral argument, and submits that oral argument would assist this Honorable Court in resolving the questions involved herein, as the issues in this case, while highlighted by the particular facts of this case, are likely to recur.

## STATEMENT OF PROCEDURAL HISTORY

The State charged Petitioner by indictment with the offense of Criminal Solicitation of Capital Murder in violation of Texas Penal Code § 15.03. Petitioner pleaded "not guilty" to this charge. The case was tried by a jury in trial case no. 219-81751-2013 and was found guilty of the offense as charged in the indictment. The trial court assessed punishment at (60) years confinement in the Texas Department of Criminal Justice - Institutional Division. Trial counsel timely filed a notice of appeal.

Petitioner appealed his case to the Fifth District Court of Appeals in Dallas, Texas. Oral arguments were heard on April 15, 2015 and the Fifth District Court of Appeals affirmed Petitioner's conviction on August 20, 2015.

Petitioner timely filed a motion for rehearing and a motion requesting En Banc Reconsideration, both of which were denied by the Fifth District Court of Appeals on September 24, 2015.

Petitioner timely filed a motion requesting an extension of (60) days in order to submit his Petition for Discretionary Review and also to request that this Honorable Court suspend T.R.A.P. Rule 9.3(b) allowing Petitioner to only file one copy of his PDR instead of the required original plus 11 copies. The Texas Court of Criminal Appeals granted both motions on October 6, 2015.

1

## STATEMENT OF THE CASE

During a business trip to Southeast Asia, Petitioner met Oprensie Juhol, A Malaysian national who worked for the same company as Petitioner. Petitioner and Juhol married on July 14, 2003 and Juhol subsequently moved to the United States. The couple had three children during the course of their marriage. As the relationship progressed, Petitioner developed sudden and severe health problems that left him physically and mentally disabled and led to subsequent issues involving addiction to prescription medications. This eventually led to Juhol suggesting divorce.

Faced with the prospect of divorce and the potential loss of his children, Petitioner placed an advertisement on the website Craigslist in an effort to obtain information on how he could get someone's permanent residence card revoked. In response to this advertisement, an individual named Robert Bass responded asserting that he could assist Petitioner in having his wife's permanent residence card revoked. Bass informed Petitioner that his uncle, who was a police officer nearing retirement, would arrange to plant narcotics in Juhol's car and a pretext stop would then be conducted whereby the narcotics would be found, resulting in Juhol's arrest and subsequent revocation of her permanent residence card.

Bass later informed Petitioner that the plan to plant narcotics could not go as planned due to vague reasons involving the Immigration and Customs Enforcement agency. The plan was allegedly changed whereby an agreement was reached for Petitioner to pay Bass to arrange for the murder of Juhol.

The murder was allegedly to take place initially on May 7, 2013 while Petitioner was attending court-ordered rehabilitation for substance abuse. Petitioner left rehabilitation and found that his wife was not dead. Bass and Petitioner allegedly agreed that Juhol would be murdered on May 21, 2013.

Petitioner withdrew from the conspiracy and went to the Allen Police Department to ensure that Bass was prevented from harming Juhol.

Under heavy influence of prescription medications, Petitioner informed the Allen Police Department of the events previously described that led to his seeking their assistance. After Petitioner assisted the police in apprehending Bass and bringing his children and Juhol to the police station for protection, Petitioner was arrested for the offense of Criminal Solicitation of Capital Murder.

2

## SUMMARY OF THE ARGUMENTS

### GROUND FOR REVIEW #1 [restated]

Did the Fifth District Court of Appeals err in determining whether the evidence was legally and factually insufficient to support the jury's rejection of Petitioner's renunciation defense?

### GROUND FOR REVIEW #2 [restated]

Did the Fifth District Court of Appeals err in determining that the evidence was not legally and factually insufficient to support the trial court's rejection of Petitioner's renunciation mitigation issue at punishment?

### GROUND FOR REVIEW #3 [restated]

Did the Fifth District Court of Appeals abuse its discretion by illegally amending an existing Penal Code in order to sustain a wrongful conviction?

3

## ARGUMENTS

### GROUND #1

Did the Fifth District Court of Appeals err in determining whether the evidence was legally and factually insufficient to support the jury's rejection of Petitioner's renunciation defense?

---

In the Fifth District Court of Appeals' opinion, it's "determining factors" as to whether the affirmative defense of Renunciation applied rested on two points:

1. Did Petitioner countermand the solicitation; and,

2. Was Petitioner's conduct voluntary in renouncing

To contend with the first point of this opinion, it is important to first get a clear understanding of Texas Penal Code § 15.04. In the context of the offense of Criminal Solicitation, the law provides:

(b)  It is an affirmative defense to prosecution under Section 15.02 or 15.03 that under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor countermanded his solicitation **OR** withdrew from the conspiracy before the commission of the object offense and took further affirmative action THAT PREVENTED the commission of the object offense. Tex. Pen. Code § 15.04(b) (West 2011).

What the Fifth District Court of Appeals missed in the above burden for the affirmative defense is this: The option given by the simple word "**OR**" (as highlighted above) to either countermand the solicitation or withdraw from the conspiracy before the commission of the object offense. Although Petitioner did not countermand the solicitation via a text message, he did withdraw from the conspiracy which in effect PREVENTED THE COMMISSION OF THE OBJECT OFFENSE.

That Petitioner did in fact withdraw from the conspiracy is indisputable and is supported by CLEAR AND CONVINCING EVIDENCE. Petitioner went to the Allen Police Department and completely disclosed his solicitation on Craigslist to have his wife deported, the modification of the plan to kill his wife, and the subsequent events that led him to seek assistance from the police department (see State's Exhibit 1). Consequently, due to the fact that Petitioner did in fact withdraw from the conspiracy which prevented the commission of the offense, the Court of Appeals were incompetent and ineffective in their opinion on this point.

Both the Court of Appeals in their opinion and the State in their brief make an incorrect interpretation of Tex. Pen. Code § 15.04(b). The Court held

4

Petitioner to the burden of countermanding the solicitation without the OPTION of withdrawing from the conspiracy. There is no authority to support this argument. The whole purpose of Tex. Pen. Code § 15.04(b) is to "prevent the commission of the object offense", which Petitioner indeed did. Although Petitioner was not charged with Criminal Conspiracy, the solicitaion is a conspiracy and THAT is what the legislature had in mind when it incorporated the "withdrew from the conspiracy" in Tex. Pen. Code § 15.04(b). It was NOT limiting that phrase to a Criminal Conspiracy charge. but was giving the OPTION to withdraw or countermand from the solicitation or the conspiracy.

The Court of Appeals' 2nd point as to whether the affirmative defense applied was that Petitioner did not renounce voluntarily. The Court of Appeals states on page 7 of its opinion, "Even if we were to conclude that Appellant's act in going to the police could constitute a countermand of his solicitation, the defense still does not apply because Appellant's renunciation was not voluntary." Petitioner respectfully disagrees for the following reasons:

Although the evidence is not completely clear as to whether Petitioner renounced voluntarily, there is certainly enough evidence to infer that he did. The Court of Appeals themselves stated on page 8 of their opinion, "And while he (Appellant) downplayed HIS RESPONSIBILITY when talking to the police, claiming he was involved only because Bass threatened him and because he was trying to get more information, a jury could have disbelieved him."

Even though the jury could have disbelieved him, it is more reasonable than not that Petitioner had to be very careful in his dealings with Robert Bass, ESPECIALLY after the fact that Petitioner found out that Robert Bass was associated with the Aryan Brotherhood (see RR Vol. 3, pg. 34-36). Being that Bass was associated with the Aryan Brotherhood, it would only be reasonable to try to gather the proper information that would lead to the arrest of Robert Bass without the fear of retaliation from Bass and his gang against him and his family.

Furthermore, what should be taken into consideration is the fact that there is plenty of testimony in the record to support the burden of the renunciation of Petitioner's conduct as being voluntary. According to Tex. Pen. Code § 15.04(c):

(c) Renunciation is not voluntary if it is motivated in whole or in part:

    (1) by circumstances not present or apparent at the inception of the actor's course of conduct that increases the probability of detection or apprehension or that make more difficult the

accomplishment of the objective; or

(2) by a decision to postpone the criminal conduct until another time or to transfer the criminal act to another but similar objective or victim.

The testimony to support that Petitioner's renunciation was voluntary is as follows:

"The true factual dispute in this case regarded the voluntary nature of Appellant's renunciation (4 RR at 10, 12, 21-26, 30-33). Renunciation is not voluntary if it is motivated in whole or part by circumstances listed in section 15.04(c), Penal Code. The State's first witness was Marshall DeBlanc, a member of Allen Police Department Internal Affairs Division (3 RR at 22-24). Nowhere in DeBlanc's testimony was there an indication that the renunciation was motivated by a change in circumstances leading to an increased probabilty of detection. Appellant asserted to DeBlanc that he had left rehab because he feared something had already happened, and further because of threats to his life (3 RR at 34-35). While the State questioned the sincerity of these assertions during redirect examination, even if dibelieved, there was no indication that there was any motive on Appellant's part attributable to fear of detection or apprehension (3 RR at 52-53). In fact, during cross-examination, DeBlanc conceded that but for Appellant's actions in coming forward, the police would have never known about the solicitation or the other facts surrounding the case (3 RR at 50).

"The State's next substantial witness was Christofer Mayfield of the Allen Police Department (3 RR at 64). Based on State's Exhibit 3,4, and the testimony of Mayfield, a significant amount of his investigation revolved around establishing the elements of criminal solicitation, finding Robert Bass, and safeguarding Appellant's wife from harm. There is no evidence contained in Mayfield's testimony or to be found in State's Exhibit 3 or 4 indicating that Appellant's renunciation was not voluntary. The only evidence reflecting the motivation for the renunciation came during cross-examination when Mayfield conceded that Appellant was expressing worry about his wife (3 RR at 128). The State attacked this assertion, eliciting from Mayfield that Appellant's demeanor was "nonchalant". (3 RR at 137). However Appellant's demeanor, even if accurately portrayed by this statement, does not lead to a reasonable inference that his renunciation was not voluntary. Finally, Detective Mayfield also conceded that unless Appellant's wife had been killed they would have never known about the solicitation, thus indicating that there was no

6

change in circumstances that had increased the likelihood of Appellant being apprehended or discovered. (3 RR at 134).

"During closing argument, the State focused a significant amount of time addressing the voluntariness of Appellant's renunciation. The prosecutor at one point asserted that the renunciation was motivated only by his own self-concern. (4 RR at 26). Even if this were an accurate statement it would not render his renunciation involuntary under 15.04(c). The State also attempted to claim that there were significant changed circumstances that led to the renunciation and that would have rendered it involuntary under 15.04(c)

"So what changed? The first thing? There's talk of [a] new shooter. There's someone else now that has to be involved. Apparently there was one person who fled to Arizona that they paid money to initially and then they had to hire Bruno. Having someone hired into this conspiracy, that increases the odds on [detection]. When you start adding more and more people who know, that's something that's changed since the inception of the conspiracy that has made it more likely you're going to get detective. So that right away means it's not voluntary.
"Asking for more money. When more money is being asked something has bow changed from the start of the conspiracy that makes it more likely you're going to get caught. When you start withdrawing more and more money, greater and greater sums, you're more likely to get detected. When you start paying someone and someone's depositing greater and greater and greater [sic] sums from you, it's more likely you're going to get detective. That again, is a reason why this isn't voluntary. When someone's telling you, you need to pay me more and more and more [sic] and that's what motivates you to go tell them, then it's not voluntary. (4 RR at 32-33).

"The significant flaw in the prosecutor's argument is that during trial they argued that his motivation for renouncing was his own self-interest after being impliedly threatened by Bass (4 RR at 26). Another flaw is that there is no evidence in the record to support the assertion that he was motivated to renounce because of the addition of more people to the conspiracy or the payment of more money to Bass, this is only speculation and conjecture not based upon any evidence in the record.

"Under the legal sufficiency standard applicable to this case, there is no evidence in the record to support a finding that Appellant's renunciation was involuntary. Furthermore, the evidence introduced at trial appears to prove renunciation as a matter of law. Appellant simultaneosly withdrew from the conspiracy and took further affirmative action that prevented the commission of the offense when he reported to the Allen Police Department, divulged his own criminal conduct, identified his codefendant, set out the plans, and assisted Allen Police Department in identifying and apprehending Robert Bass. It is difficult to conceive of what more Appellant could have

7

done under the circumstances to merit a finding on the renunciation defense. Therefore the judgement of the trial court should be reversed and a judgement of acquittal entered."

## GROUND #2

Did the Fifth District Court of Appeals err in determining that the evidence was not legally and factually insufficient to support the trial court's rejection of Petitioner's renunciation mitigation issue at punishment?

---

In their review of this issue, the Fifth District Court of Appeals relied on the same facts to deny this issue as they did in Petitioner's first point of error. That is, that due to the fact that Petitioner did not COUNTERMAND HIS SOLICITATION the renunciation defense did not apply (see pg. 8-9 of the Court's opinion).

As Petitioner pointed out earlier, pursuant to Tex. Pen. Code § 15.04(b), one does not have to countermand the solicitation as long as one "withdraws from the conspiracy", which in effect "prevents the commission of the object offense". Petitioner did in fact "withdraw from the conspiracy". This is supported by CLEAR AND CONVINCING EVIDENCE (see State's Exhibit 1). Due to this fact, the renunciation defense did indeed apply and was more than available to Petitioner. The Court of Appeals is clearly wrong in their review of this issue.

Tex. Pen. Code § 15.04(d) provides for a punishment mitigation issue to be considered by the fact-finder with regard to imperfect renunciation:

> Evidence that the defendant renounced his criminal objective by abandoning his criminal conduct, countermanding his solicitation, or withdrawing from the conspiracy before the criminal offense was committed and made substantial effort to prevent the commission of the object offense shall be admissible as mitigation at the hearing on punishment if he has been found guilty of criminal attempt, criminal solicitation, or criminal conspiracy; and in the event of a finding of renunciation under this subsection, the punishment shall be one grade lower than that provided for the offense committed.

Renunciation under Section 15.04(d) is a punishment phase affirmative defense. **SCOTT v STATE**, 2007 Tex.App. LEXIS 7279 (Tex.App. - Ft. Worth 2007). As such, appellate review of its rejection at the punishment phase should be treated identically to the analysis of an affirmative defense at the guilt phase of a trial. The primary difference between guilt renunciation and punishment renunciation is that during punishment there is no inquiry into

8

the defendant's motivations. The statute only requires an abandonment of criminal conduct coupled with "substantial efforts" to prevent the commission of the offense. Not only are the defendant's motivations made irrelevant, successful prevention of the offense is not required.

There can certainly be no dispute that Petitioner abandoned his criminal conduct in this case and made substantial efforts to avoid the commission of the offense. As previously set forth, Petitioner reported to a police department and disclosed his own criminal conduct, assisted in the apprehension of his co-conspirator and made substantial efforts to avoid the murder of his wife by assisting the Allen Police Department in apprehending Robert Bass. For these reasons, the judgement assessing punishment at sixty years should be reversed and the cause remanded for new punishment in accordance with the punishment range for a second-degree felony.

## GROUND #3

Did the Fifth District Court of Appeals abuse its discretion by illegally amending an existing Penal Code in order to sustain a wrongful conviction?

The Fifth District Court of Appeals states on page 7 of its opinion:

> "This Court, however, has interpreted subsection (c) [Tex. Pen. Code § 15.04] to be nonexclusive descriptions of the ways in which renunciation may not be voluntary... Specifically, we have concluded the legislature did not intend for a renunciation defense to apply where intent to kill was still present; rather, repentence or change of heart is required before renunciation is voluntary within the meaning of the statute. We reject appellant's invitation to revisit our holding in Chennault."

It is not in the Court's power to determine the "intent" of a statute and expand a statute to include additional meaning to it. It is the duty of the Court to ENFORCE the Penal Code, NOT amend it. The Court has no power to discard statutory barriers and simply extend its definitions of what the intent of the legislature had intened to say. Judicially amending a validly enacted statute in this way is a flagrant breach of the separation of powers.

Congress clearly anticipated the scenario of a renunciation defense by crafting Tex. Pen. Code § 15.04. One cannot assume that Congress left room for other, judge-made applications of ways in which renunciation may not be voluntary. Because there is no plausible basis for inferring that Congress intended or could have anticipated this amendment to the Penal Code, its adoption here amounts to a pure override of the statute Congress enacted.

9

By allowing the Court to determine its own definition, meaning, or intent of an existing statute, it opens the door that would make it impossible for anyone to be acquitted of any offense or any prisoner from getting relief in any post-conviction pleading, as the Court can simply apply its own definition and intent in order to expand any existing Penal Code in or to deny any relief and sustain the conviction.

This is exactly what the Court of Appeals did in the instant case in response to Petitioner's renunciation defense under Tex. Pen. Code § 15.04. The Court's own words state that they amended the definition and intent of the statue in order to deny relief to Petitioner's direct appeal, and therefore sustained a wrongful conviction.

It is interesting to note that since the Fifth District Court of Appeals first amended this statute in its ruling on the **CHENNAULT** case, Tex. Pen. Code § 15.04 has never been modified or updated by the legislature to reflect the amendments the Court made, indicating that the legislature has not seen any need to modify or amend their intent or the meaning of this statute. This amendment was not even required in the **CHENNAULT** case in order to sustain the conviction.

In reviewing **CHENNAULT v STATE** [667 S.W.2d 299 (Tex.App. - Dallas 1984)], it is clear that the defendant, Chennault, did not meet the burden of Tex. Pen. Code § 15.04. After arriving early in order to meet with the "hitman" that he was going to pay $2500 to in order for him to kill someone, Chennault saw the hitman with another man and subsequently called off the hit out of fear that the hitman was working with the intended victim. Since Chennault's renunciation was based on his fear of the increased possibility of being detected or apprehended. Chennault also took no further affirmative action to prevent the object offense. Chennault was subsequently arrested as the hitman turned out to be an undercover Texas Department of Public Safety agent. Accordingly, Chennault's renunciation was NOT voluntary because he clearly did not meet the burden of Tex. Pen. Code § 15.04(c). Thus there was no need for the Court of Appeals to amend the Penal Code in order to sustain the conviction of the **CHENNAULT** case.

In the instant case, however, Petitioner met the entire burden of Tex. Pen. Code § 15.04 and should have been acquitted. Even with a guilty verdict, Petitioner should not have been sentenced for more than 20 years. However, the Court of Appeals used the same illegal amendment to as they used in the **CHENNAULT** case in order to sustain a wrongful conviction.

The Fifth District Court of Appeals should have overturned Petitioner's

10

conviction, but instead illegally amended an existing statute to uphold a wrongful conviction. It is the duty of the legislature to amend, update, or change an existing statute, which includes the Texas Penal Code -- NOT the Court's. The judgement of the trial court should therefore be overturned and a notice of acquittal should be entered.

## THIS HONORABLE COURT SHOULD GRANT REVIEW IN THIS CASE

The decision made by the Fifth District Court of Appeals abolishes any meaningful distinction in upholding and enforcing existing statutes, and opens the door for the Court to abuse the powers granted to it by the Texas and United States Constitution by illegally amending statutes in order to sustain wrongful convictions and deny relief to any prisoner seeking post-conviction relief.

This abuse of power by the Court of Appeals amounts to a judicial abuse of legislative and constitutionally guaranteed rights.

The rights at stake herein go to the heart of the criminal justice system, and their violation and this abuse of power by the Court of Appeals should NOT be countenanced by this Honorable Court, not even to allow one conviction to stand.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Honorable Court reverse the judgement of the trial court and enter an acquittal or remand this cause to that court for a new trial.

Executed this 2nd day of December, 2015.

Respectfully submitted,

Steven Gordon - Petitioner
Pro Se Representation
TDCJ #1934396
Mark W. Stiles Unit
3060 FM 3514
Beaumont, TX 77705

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review, with Appendix, was delivered to the individuals listed below via the U.S. Postal Service, postage pre-paid, on December 2, 2015.

1)  to the **Texas State Prosecuting Attorney**

P.O. Box 13046, Capitol Station
Austin, Texas   78711

and

2)  to the **Collin County Criminal District Attorney**

Mr. John R. Rolater, Esq., District Attorney
District Attorney's Office
2100 Bloomdale Road, Suite 100
McKinney, Texas   75071

Respectfully submitted,

Steven Gordon - Petitioner
Pro Se Representation
TDCJ #1934396
Mark W. Stiles Unit
3060 FM 3514
Beaumont, TX   77705

12

REFORM and AFFIRM; and Opinion Filed August 20, 2015.

In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

No. 05-14-00824-CR

---

STEVEN LEE GORDON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 219th Judicial District Court
Collin County, Texas
Trial Court Cause No. 219-81751-2013

---

# MEMORANDUM OPINION

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Brown

A jury convicted Steven Lee Gordon of criminal solicitation of capital murder after finding he paid someone to kill his wife. The trial court assessed punishment at sixty years in prison. On appeal, appellant challenges the legal and factual sufficiency of the evidence to support (1) the jury's rejection of his affirmative defense of renunciation and (2) the trial court's rejection of his renunciation defense at punishment. He also complains about errors in the judgment. We conclude his sufficiency issues are without merit but sustain in part his complaints regarding the judgment. We modify the judgment and affirm as modified.

Appellant met Oprensie Juhol during a business trip to Malaysia, subsequently married her, and had three children. After he became addicted to Ambien and Xanax, quit working, and was sleeping all the time, Juhol told him she wanted a divorce. Worried that she would take their

children to Malaysia, appellant posted an item on craigslist.com wanting information on how to get her green card revoked. Robert Bass responded.

Bass told appellant he had an uncle who worked as a police officer and was nearing retirement., Bass said he could get his uncle to plant drugs in Juhol's vehicle and have Juhol stopped and arrested for drug possession, which would result in her being deported. Appellant met Bass and gave him $5000 to execute the plan. A few days later, appellant gave Bass an additional $4000 for the uncle to get appellant's sentence for prescription fraud reduced by setting him up as an informant.

Shortly after getting paid, Bass told appellant his uncle could not stop Juhol's vehicle because of some issue with Immigration and Customs Enforcement (ICE). At that point, appellant and Bass came up with a new plan to kill Juhol, and appellant gave Bass an additional $15,000. The murder was supposed to occur on May 7, 2013, while appellant was in court-ordered rehab for prescription fraud so that he would have an alibi. Appellant went into rehab as scheduled. When he had not heard anything two days later, he left rehab and learned Juhol was not dead. Appellant was told the shooter, who was reportedly Bass's brother or nephew, had fled to Arizona because he believed he had been identified.

At that point, appellant paid Bass another $10,000 to hire a second shooter, "Bruno." As before, appellant went into rehab so that he would have an alibi. Again, appellant left rehab early and found that Juhol had not been killed. That night, May 19, appellant told Juhol someone had tried to kill her. When she asked why, he told her "you bump on people," which Juhol understood to mean that she hurt people's feelings. He also said that some people "hate foreigners." Appellant left the house and said he was going to the police, but Juhol said he returned too quickly for him to have actually gone to the police station.

That same night, appellant sent a series of texts to Bass questioning why the murder had not occurred and wanting Bass to "take her out tonight." He asked, "Is it going to be done or are you walking away from this leaving me screwed?" He said he was able to come up with the "25 grand that Bruno wants for the job" and asked if he would still do it. Appellant asked if it could be done that night, and said the door was unlocked and there was no company. Appellant threatened to go to internal affairs and report Bass's uncle if the murder was not done.

Bass responded the next morning with several texts:

> It was scheduled. For the 21st. To give u time to clear urself.
>
> How  dar u threaten my unc. . . If u were just a little bit more patience [sic]. . .
>
> You don't need to no [sic] when . . . it was going to be done . . .
>
> But u threaten my uncl
>
> This is bruno...you want to threaten AB..? We will teach u a lesson.. About AB....mother fucker

AB was identified as the Aryan Brotherhood.

Worried that he had become the target, appellant immediately went to the Allen Police Department, where he talked to Sgt. Marshall DeBlanc in the Internal Affairs Division and Cpl. Christopher Mayfield in the Criminal Investigations Division. The interviews were recorded and played for the jury. In the interviews, appellant recounted how he placed a post on craigslist to get his wife deported and how it turned into a murder plan. Appellant, however, claimed that he went along with the murder plan because Bass threatened him and he was trying to get information so that he could go to the police. Several times during the interview, appellant voiced concern that he had left his court-ordered rehab early and wanted DeBlanc to contact his probation officer so that he would not be jailed. As part of their investigation, the police followed appellant to his bank, where he obtained bank receipts showing that he had deposited

almost $31,000 from a Fidelity account into his bank account on April 29, 2013, and then withdrawn $28,000 in cash three days later.

After investigating appellant's story, police arrested appellant later that day and had Bass arrested the next day. The police also concluded "Bruno" and the first shooter were "completely fictitious" and found no evidence of a "corrupt cop." Rather, Bass was a "con" with multiple arrests. Both DeBlanc and Mayfield agreed that there was no existing investigation into Bass and the police would not have known about the plot against Juhol if appellant had not come forward.

After hearing the evidence, the jury rejected appellant's affirmative defense of renunciation and found him guilty of criminal solicitation of capital murder. Appellant elected for the trial court to determine punishment. At the punishment hearing, Juhol testified that a couple of months before this offense, appellant made her a cup of instant coffee. Afterwards, while driving to a doctor's appointment, she was sleepy, her heart was racing, and she had trouble breathing. The next day, appellant made her coffee again. This time, she noticed her coffee had a white powder in it and did not drink it. Each time after that, she said her instant coffee had white powder in it, and appellant would then call her at work and ask how she was feeling. Ultimately, she checked her container of instant coffee and saw white powder in it. She gave the container of coffee to a friend to hold for her until she took it to the Allen police. The police sent it to a lab, where it tested positive for Ambien.

Appellant testified at punishment and denied putting Ambien in his wife's coffee. Rather, he suspected his wife poisoned him, explaining that he became ill after his wife returned from a trip to Malaysia in 2010 and lost 120 pounds over a period of about six months.

When asked why he hired someone to kill Juhol instead of just divorcing her, he said it was "difficult to answer" but explained he became "enraged." He acknowledged his choices

were bad and said he was ashamed of himself. He said the idea was to have her deported and then changed to a murder plan, which he was "uncomfortable" with but "went along with it." He claimed he "tried to put a stop to it early on" by telling Bass he was going to the police, but Bass responded with threats, leaving him "stuck between a rock and hard place." He ultimately went to police because he "just couldn't do that to [his] children." Appellant asked for a renunciation finding, but the trial court rejected his request.

In his first and second issues, appellant contends the evidence was legally and factually insufficient to support the jury's rejection of his affirmative defense of renunciation.

We may review a jury's rejection of an affirmative defense for legal and factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). In a legal sufficiency review, we first determine whether the record contains a scintilla of evidence favorable to the factfinder's decision and disregard all evidence to the contrary unless a reasonable factfinder could not. *Id.* (citing *Matlock v. State*, 392 S.W.3d 662, 669–70 (Tex. Crim. App. 2013)). We overturn the jury's finding only if the evidence conclusively proves his affirmative defense and no reasonable factfinder could believe otherwise. *Id.* In a factual sufficiency review, we examine the evidence in a neutral light and overturn the factfinder's decision only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.* In both reviews, we defer to the jury's determination of the credibility of the witnesses and the weight to give the evidence. *Matlock*, 392 S.W.3d at 670–71.

It is an affirmative defense to prosecution for criminal solicitation if "under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor countermanded his solicitation . . . before commission of the object offense and took further affirmative action that prevented the commission of the object offense." TEX. PENAL

CODE ANN. § 15.04(b). Thus, under the statute, a defendant must countermand the solicitation and the renunciation must be voluntary.

The penal code does not define "countermand." Where a statutory term is not defined by the Legislature, we give that term its ordinary meaning. *Morrow v. State*, 862 S.W.2d 612, 614 (Tex. Crim. App. 1993). In consulting dictionaries for the meaning of a particular word, we look to the lexicographical alternatives the Legislature most likely had in mind, taking into account the context provided by the phrase, subsection of the statute, and overall statutory scheme in which the word appears. *Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim. App. 2012).

The term "countermand" is defined by Webster's Dictionary to mean "to revoke (a former command)" or to "cancel or rescind (an order) by giving a contrary order"; "to recall or order back by a superseding contrary order"; or "to stop or prohibit by revoking an order or issuing a contrary order." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 519 (1981). Thus, to have countermanded his solicitation of his wife's murder, appellant must have revoked, rescinded, or recalled his earlier order to Bass. Here, there is no evidence that appellant ever communicated to Bass that he did not want Juhol to be killed. To the contrary, on the night before he went to the police, he was urging Bass to "take her out" that night, telling him the door was unlocked and Juhol had "no company." So, while appellant reported the planned murder to the police, he never countermanded his solicitation of it with Bass (or Bruno).

In his brief, appellant argues he "withdrew from the conspiracy" by going to the Allen Police Department and disclosing his "solicitation on Craigslist to have his wife deported, the modification of the plan to kill his wife, and the subsequent events that led him to seek assistance" from the police. But appellant was not charged with conspiracy; he was charged with criminal solicitation. The renunciation defense under section 15.04(b) applies to two offenses, criminal conspiracy under section 15.02 and criminal solicitation under section 15.03. It requires

–6–

that "the actor countermanded his solicitation or withdrew from the conspiracy." *See* TEX. PENAL CODE ANN. § 15.04(b). But only a person charged with solicitation may countermand a solicitation and only a person charged with conspiracy can withdraw from a conspiracy. Consequently, we agree with the State that it is no defense that appellant renounced a crime for which he was not charged.

Even if we were to conclude that appellant's act in going to the police could constitute a countermand of his solicitation, the defense still does not apply because appellant's renunciation was not voluntary. Under the statute, renunciation is not voluntary if it is motivated in whole or in part (1) by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective; or (2) by a decision to postpone the criminal conduct until another time or to transfer the criminal act to another but similar objective or victim. TEX. PENAL CODE ANN. § 15.03(c).

Appellant contends the two factors listed in subsection (c) are the exclusive means by which a renunciation defense can be rendered involuntary and there is no evidence that his renunciation was motivated by either circumstance.

This Court, however, has interpreted subsection (c) to be nonexclusive descriptions of the ways in which renunciation may not be voluntary. *See Chennault v. State*, 667 S.W.2d 299, 304 (Tex. App.—Dallas 1984, no pet.). Specifically, we have concluded the legislature did not intend for a renunciation defense to apply where the intent to kill was still present; rather, repentance or change of heart is required before renunciation is voluntary within the meaning of the statute. *Id.* We reject appellant's invitation to revisit our holding in *Chennault*.

Here, the evidence showed appellant's renunciation was not prompted by "repentence or change of heart." Rather, the evidence showed appellant went to the police out of self-interest,

–7–

fearing he had become Bruno's target. Just the night before, he urged Bass to get the job done and encouraged him to come that night. The next morning, after receiving a threatening text from "Bruno," he went to the police. During the recorded interview, he repeatedly asked for protection for himself and sought police intervention in his prescription fraud case, asking the officer to contact his probation officer to excuse him from court-ordered rehabilitation. And while he downplayed his responsibility when talking to the police, claiming he was involved only because Bass threatened him and because he was trying to get more information, a jury could have disbelieved him. Considering the evidence under the appropriate standard of review, we conclude the evidence was legally and factually sufficient for a jury to reject appellant's affirmative defense of renunciation. We overrule the first and second issues.

In his third issue, appellant contends the evidence was legally and factually insufficient to support the trial court's rejection of his renunciation mitigation issue at punishment.

Evidence that a defendant renounced his criminal objective by countermanding his solicitation before the criminal offense was committed and that he made a substantial effort to prevent commission of the object offense is admissible as mitigation evidence at the punishment phase of trial if he has been found guilty of criminal solicitation. *See* TEX. PENAL CODE ANN. § 15.04(d). If the factfinder finds the defendant renounced his criminal objective, the punishment shall be one grade lower than that provided for the offense committed. *Id.* Renunciation of an inchoate offense under section 15.04(d) is a punishment-phase affirmative defense in which the defendant has the burden of proof by a preponderance of the evidence. *Hall v. State*, 160 S.W.3d 24, 38–39 (Tex. Crim. App. 2004).

As before, the evidence supported the trial court's rejection of the renunciation defense at punishment because appellant did not renounce his solicitation of Juhol's murder. As explained previously, rather than attempt to revoke or recall the solicitation with Bass or Bruno, appellant

–8–

in fact was still trying to convince Bass to carry out the murder up until the night before he went to the police. And, even when he went to the police, he never contacted Bass and told him not to kill Juhol. In other words, there was no evidence or factually insufficient evidence that appellant countermanded his solicitation. Under these circumstances, we conclude there was legally and factually sufficient evidence for the trial court to decline to make a finding of renunciation. We overrule the third issue.

In his fourth issue, appellant requests we correct three errors in the judgment regarding the date of judgment, the statute, and the name of the offense. First, the judgment reflects judgment was entered on May 7, 2014, which is the date the jury returned the verdict. But the reporter's record shows the trial court did not sentence appellant until June 11, 2014; consequently, we agree June 11, 2014 is the correct date of judgment. Second, the judgment shows the "Statute for Offense" as "19.03(a)(3) Penal Code," which is capital murder for remuneration. Appellant was not convicted of capital murder; rather, the record shows he was convicted of criminal solicitation to commit capital murder under section 15.03(d)(1) of the penal code. Consequently, the correct statute for the offense is section 15.03(d)(1).

Third, appellant argues the judgment lists the incorrect offense for which he was convicted, solicitation to commit capital murder for remuneration, and should be corrected to criminal solicitation. Here, we disagree. The indictment alleged solicitation of capital murder and the jury specifically convicted him of that offense. Consequently, we conclude the judgment correctly identifies the offense.

We have the authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the judgment to correct the date judgment was entered and the statute for the offense of which appellant was convicted.

–9–

# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

STEVEN LEE GORDON, Appellant

No. 05-14-00824-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-81751-2013.
Opinion delivered by Justice Brown. Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, we **REFORM** the trial court's judgment to show (1) judgment was entered on June 11, 2014, and (2) appellant was convicted under section 15.03(d)(1) of the Texas Penal Code.

As **REFORMED**, we **AFFIRM** the trial court's judgment.

Judgment entered this 20th day of August, 2015.