

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00348-CR

---

DUBLAS VASQUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 390th District Court
Travis County, Texas
Trial Court No. D-1-DC-23-302899, Honorable Melissa Goodwin, Presiding

---

August 14, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Dublas Vasquez, was found guilty by a jury of one count of aggravated kidnapping and two counts of sexual assault.[1] By his two issues, he challenges his conviction based on: (1) the sufficiency of the evidence

---

[1] TEX. PENAL CODE ANN. §§ 20.04(a)(4); 22.011(a)((1).

supporting the jury's negative finding on his affirmative defense to aggravated kidnapping; and (2) the trial court's admission of evidence over his Rule 403 objection. We affirm.[2]

## BACKGROUND

In 2023, after meeting on the street in Austin, Texas, the victim, "Jue," and Appellant exchanged numbers and texted each other.[3] Over the course of the following weeks, Appellant repeatedly asked Jue out on a date and asked her to visit his apartment. She eventually accepted and went to Appellant's apartment. Upon arriving at his apartment, Appellant quickly ushered Jue in and locked the door behind her. Despite Jue's insistence there be no sexual activity on the date, Appellant began aggressively kissing her. At first, Jue did not refuse the advances, but then the advances became more insistent, culminating in Appellant sexually assaulting her in his bedroom.

After the assault, Jue attempted to flee the apartment, and while frantically searching for her keys, Appellant grabbed her once more but then let her go. Jue called her roommate from her car and said she thought she was just raped, then drove home. She reported the incident to the police the next day.

Appellant was indicted for one count of aggravated kidnapping and two counts of sexual assault. During the guilt/innocence phase of the trial, over Appellant's objections, Jue testified she noticed Appellant wore an ankle monitor during the assault. The State

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Where a conflict exists between precedent of the Third Court of Appeals and this Court, this appeal has been decided in accordance with precedent of the Third Court of Appeals. TEX. R. APP. P. 41.3; *Mitschke v. Borromeo*, 645 S.W.3d 251 (Tex. 2022).

[3] The victim was referred to by the pseudonym "Jue" throughout the proceeding to protect her identity, and we will refer to her by the pseudonym for this opinion.

also introduced text messages Jue sent to Appellant days after the assault, in which she referred to him as a "rapist."

The jury found him guilty of all three counts. At the punishment phase, Appellant requested a jury charge question on his statutory affirmative defense asking whether he "voluntarily released the victim in a safe place" to reduce the punishment.[4] The jury answered in the negative on the question of Appellant's affirmative defense and sentenced him to sixty years' imprisonment for the aggravated kidnapping charge and twenty years' imprisonment for each sexual assault charge.[5]

## APPLICABLE LAW

Under the Texas Penal Code, aggravated kidnapping is a first-degree felony offense. § 20.04(c). However, "[a]t the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." § 20.04(d).[6]

### ISSUE ONE—SUFFICIENCY OF THE EVIDENCE AGAINST THE AFFIRMATIVE DEFENSE

For his first issue, Appellant challenges the sufficiency of the evidence supporting the jury's finding against his affirmative defense to aggravated kidnapping. Primarily, he

---

[4] § 20.04(d).

[5] The jury also assessed fines which were waived by the trial court due to Appellant's indigent status.

[6] The punishment range for a second degree offense is two to twenty years, while the punishment range for a first degree offense is five to ninety-nine years. §§ 12.33(a); 12.32(a).

argues the evidence was more than sufficient for a finding by a preponderance that he "voluntarily released the victim in a safe place," as required by statute. § 20.04(d).

## STANDARD OF REVIEW

Affirmative defenses may be evaluated for legal and factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). In a legal-sufficiency review of an affirmative defense, reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *Id.* (citing *Matlock v. State*, 392 S.W.3d 662, 669–70 (Tex. Crim. App. 2013)). The finding of the factfinder rejecting a defendant's affirmative defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and "no reasonable [factfinder] was free to think otherwise." *Butcher*, 454 S.W.3d at 20 (quoting *Matlock*, 392 S.W.3d at 670) (insertion original).

In a factual-sufficiency review of a finding rejecting an affirmative defense, and unlike in a legal-sufficiency review, courts examine the evidence in a neutral light. *Butcher*, 454 S.W.3d at 20 (citing *Matlock*, 392 S.W.3d at 671). A finding rejecting a defendant's affirmative defense cannot be overruled unless, "after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Butcher*, 454 S.W.3d at 20 (quoting *Matlock*, 392 S.W.3d at 671).

4

Appellant argues the evidence during the punishment phase demonstrated he "voluntarily released the victim in a safe place." He urges the evidence established he released the victim by getting off her after the assault and permitting her to gather her clothing and then by releasing her—after initially restraining her—as she attempted to leave his apartment. He also insists the evidence demonstrated his apartment was located in a safe area with nearby emergency services and low crime. He concludes, because he allowed the victim to leave his apartment, and because the area outside of his apartment was otherwise safe, the jury could have only come to one conclusion to find in favor of his affirmative defense. We find his arguments unconvincing.

We begin with Appellant's contention he "voluntarily released" the victim. For there to be a "release," there must be evidence the kidnapper performed some overt and affirmative act that brings home to the victim that he/she has been fully released from captivity. *Williams v. State*, Nos. 03-14-00228-CR, 03-14-00229-CR, 2016 Tex. App. LEXIS 780, at *12 (Tex. App.—Austin Jan. 27, 2016, no pet.) (mem. op., not designated for publication) (citations and quotations omitted). For the release to be "voluntary," there must be evidence the release was not the result of intervention or action by others, such as rescue by the police or escape by the victim. *Id.*[7] Simply getting off the victim after assaulting her does not constitute a "voluntary release" of the victim; it is merely the completion of the crime of sexual assault. Releasing the victim after restraining her as she attempted to leave also did not constitute a "voluntary release." The victim unlocked

---

[7] *See also Ex parte Chandler*, 182 S.W.3d 350, 355 (Tex. Crim. App. 2005) ("Texas courts have long held that a kidnap victim's escape from captivity does not entitle a defendant to an instruction on the issue of 'voluntary release in a safe place.'").

the door to Appellant's apartment after he let go of her and she fled. But, as she left she was afraid Appellant would come after her. She did not feel she was "fully released from captivity." Rather than being released, the manner in which the victim left the apartment is better characterized as an escape. Therefore, the evidence was both legally and factually sufficient for the jury to find against Appellant on his affirmative defense.[8]

Appellant's emphasis on the fact he lived in a safe neighborhood is similarly misplaced. Even if we were to entertain, *arguendo*, Appellant voluntarily released his victim and he lived in a safe neighborhood, he nonetheless failed to release the victim in a safe place. Regardless of whether the area *outside* the apartment was safe, the place in which Appellant released the victim—*inside* the apartment—was objectively not safe.[9] Inside the apartment was where the offense had just taken place and where the assailant—Appellant—lived. Because Appellant did not establish he released the victim to a safe place, he failed to meet his burden to prove his affirmative defense by a preponderance.[10]

The evidence did not conclusively establish Appellant's affirmative defense such that no rational factfinder could find otherwise, and the jury's rejection of the affirmative defense was not so against the great weight of the evidence as to be manifestly unjust,

---

[8] Appellant testified at trial and claimed the encounter was consensual. However, "[b]ecause the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony." *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The jury's verdict indicates they discounted Appellant's testimony.

[9] The statutory language requires the actor to "voluntarily releas[e] the victim in a safe place." § 20.04(d). This connotes the place in which the "release" occurs must be itself a "safe place," not a place which is connected to or accessible to a safe place.

[10] Our holding regarding where the victim was released is limited to the facts of this case. We do not opine on, nor do we hold that, an actor must actually release the victim within a safe place; bringing a victim to the door of an objectively safe place—such as a fire station or hospital—would likely meet the requirements of the affirmative defense.

conscience-shocking, or clearly biased. Thus, the evidence was both legally and factually sufficient to support the jury's finding against Appellant's affirmative defense.

Appellant's first issue is overruled.

**ISSUE TWO—RULE 403 OBJECTIONS**

Appellant's second issue complains the trial court erred in denying his Rule 403 objections to evidence presented at trial because the evidence was prejudicial.

### STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* An abuse of discretion does not occur unless the trial court acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021) (citation and quotations omitted). If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citations omitted). If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*

### ANALYSIS

Appellant complains the trial court should have sustained his objections to:

(1) the victim's testimony she observed Appellant was wearing an ankle monitor during the sexual assault; and

(2) text message exhibits introduced into evidence in which the victim called Appellant a "rapist."

The erroneous admission of evidence is a non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (citations omitted). Non-constitutional errors are harmful, and thus require reversal, only if they affect Appellant's substantial rights. *Id.* This means that an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *Id.* In making this determination, we consider:

(1) the character of the alleged error and how it might be considered in connection with other evidence;

(2) the nature of the evidence supporting the verdict;

(3) the existence and degree of additional evidence indicating guilt; and

(4) whether the State emphasized the complained of error.

*Id.* Assuming, *arguendo*, the evidence was admitted in error, we hold Appellant's substantial rights were not affected so as to require reversal of the judgment.

Regarding Appellant's complaint of the text messages calling him a "rapist," the victim—without objection—also testified she texted Appellant two days after the incident and called him a "rapist." Effectively, she confirmed the contents of the objectionable text messages to the jury, and the comment was in evidence without admission of the text

8

messages.  There were also several instances throughout the trial where the word "rape" was used:

- both the victim and her roommate testified the victim called the roommate to tell her she was raped;

- a corrections officer was permitted to testify Appellant told her voluntarily: "I know what I did was wrong.  I can't stop thinking about it, about raping";

- during Appellant's testimony, the State cross-examined him and asked him—without objection—about the ankle monitor; and

- during the punishment phase, bodycam footage was introduced from an arresting officer who detained Appellant at a park for chasing after women.  In the video, Appellant threatened to "kill" and "rape" not only the arresting officer, but a woman he was chasing at the time of his arrest.

When the victim was permitted to call Appellant a "rapist" without challenge and the jury heard multiple witnesses use the term "rape"—including Appellant himself—the inflammatory nature of the term "rapist" in a text message is diminished by comparison.

The victim's testimony observing Appellant wearing an ankle monitor similarly had no discernable effect on the outcome of the trial.  The victim testified she observed the ankle monitor on Appellant during her long, detailed narrative of the assault.  This was a brief part of the detailed description of the attack she suffered, and but a brief part of hours of testimony given by several witnesses and pages of evidence.

The introduction of the text messages and ankle monitor testimony did not influence the jury and had only a slight effect on the outcome of the trial, if any.  Therefore, we overrule Appellant's second issue.

9

## CONCLUSION

We affirm the judgment of the trial court.

Alex Yarbrough
Justice

Do not publish.